h JOAN BERNARD ARMSTRONG, Chief Judge.

STATEMENT OF THE CASE

Defendant Percy J. Anthony was charged by bill of information on August 21, 2001 with possession with intent to distribute heroin, a violation of La. R.S. 40:966(A). Defendant pleaded not guilty at his September 5, 2001 arraignment, attended by counsel. Following trial on the merits, defendant was found guilty as charged on February 28, 2002 by a twelve-person jury. The trial court denied defendant’s motion for a new trial on July 1, 2002 and on August 14, 2002 denied defendant’s motion to quash multiple bill and motion for new trial. A lunacy hearing was conducted on December 10, 2002, with defendant represented by his pre-trial and trial counsel, Gary Wainwright. At the conclusion of the lunacy hearing, the trial court found defendant competent to proceed and set the multiple bill of information for hearing. On February 14, 2003, defendant appeared for sentencing and the State did not file a multiple bill. The trial court sentenced the defendant to five years at hard labor, without- benefit of parole, probation or suspension of sentence. The trial court granted defendant’s motion for appeal on March 26, 2003. On April 7, 2003, the Louisiana Appellate Project assigned attorney Laura Pavy to handle the appeal.

STATEMENT OF FACTS

It was stipulated that if New Orleans Police Officer Harry O’Neal were to be called as a witness, he would be qualified as an expert in the examination and analysis of controlled dangerous substances, and that the thirty-three foil packets of powder he tested were positive for heroin.
Officer Robert Ferrier, a seven-year veteran New Orleans police officer and four-year veteran on the Natcotics unit in the Sixth District, testified that on July 5, 2001, at approximately 12:30 p.m., he was conducting a narcotics surveillance of 2801 S. - Robertson St., in the rear driveway, near a walkway that led to Washington Avenue. The apartment was located in the Magnolia or C.J. Peete Housing Development. The officer observed defendant loitering in the area, and made an in-court identification of the. defendant as the man he observed. An unidentified male came *126 to the 'walkway, and defendant walked over to meet him. The male handed defendant currency. Defendant walked to the rear entrance of 2801 S. Robertson St. He pulled what appeared to be a small magnetic key container from the side of a metal utility box, removed a small object, and reattached the container to the side of the utility box. Defendant then walked over to the unidentified male and handed a small object to him, after which the male walked southbound on Washington Avenue out of view. Approximately fifteen minutes later, a second unidentified male appeared and engaged defendant in a conversation. Defendant walked over to the utility box again, plucked the magnetic key container from the side, took out a small object, and reattached the container to the utility box. Meanwhile, the second unidentified male removed some currency from his pocket. When defendant returned, the male handed defendant currency, and defendant handed the male a small object. The male then walked away down Washington Avenue. Det. Ferrier determined that defendant was selling narcotics and called in other officers to arrest him. Subsequently, he heard a female yell a warning that the police were coming, and defendant disappeared into the hallway at 2801 S. Robertson St. Det. Ferrier testified on cross examination that he used binoculars when needed during his surveillance, and that he arrested the defendant after he saw him in possession of heroin.
Det. Jeffrey Giroir, a member of the Sixth District Narcotics Unit, assisted in the surveillance in the Magnolia Housing Development and the arrest of defendant on July 5, 2001. Upon receiving communication from Det. Ferrier, he pulled his vehicle to the intersection of Washington Avenue and South Robertson Street, whereupon he observed defendant run across a courtyard into a hallway in the 2800 block of South Robertson. Det. Gir-oir and Det. Raymond Veit chased defendant inside. Defendant entered Apartment F. Det. Giroir followed and arrested defendant inside the apartment. Det. Veit remained outside in the stairwell to detain another individual. The officer recovered $318, in mostly ten and twenty-dollar bills, from defendant’s person.
Det. Kyle Hinrichs, another officer assigned to the Sixth District, testified that he assisted in the investigation on July 5, 2001 in an unmarked police car. Det. Fer-rier directed him to the utility box attached to 2801 South Robertson Street, where he recovered a magnetic container with thirty-three foil packets containing a white substance consistent with heroin. The box remained in his possession until he released it at NOPD Central Evidence and Property. He sealed the package on that day, and the package was opened once for testing. He identified the foils as the same foils that were in the box when he recovered it from the utility box.
Det. Raymond Veit testified that he was with his partner, Det. Giroir, when he observed defendant run across the courtyard and enter a hallway in the 2800 block of S. Robertson in the company of another individual. Det. Veit detained that individual, Babom Horton, inside on the stairwell, while Det. Giroir followed defendant up the stairs. Mr. Horton was arrested and charged with interfering with a police investigation. Det. Veit made an in-court identification of the defendant.
Sheila Rodriguez, of 1210 South Roche-blave Street, testifying on behalf of the defendant, stated that she knew Babom Horton and claimed that Mr. Horton resided at 2800 S. Robertson St., and that she was sitting with him on his porch on the morning of July 5. Mr. Horton said he had to use the restroom,, so Ms. Rodriguez walked to a store across the street. When *127 she returned, she called out to Mr. Horton through a second floor window. When he came downstairs he was wearing handcuffs and was in the company of a police officer. Ms. Rodriguez had not seen any police run into the stairwell. Ms. Rodriguez admitted that she had seen defendant in the neighborhood.
Babom Horton testified that he works as a banquet server at the Fairmont Hotel ane lives at 2800 South Robertson Street, Apartment F. He knew the defendant. He essentially related the same story as Ms. Rodriguez. He said that when he exited his apartment to go back downstairs to meet her, the stairwell was full of police. He said they asked him who was in his apartment. Mr. Horton said that defendant had asked to use his apartment to meet a female friend. However, he told the police no one was inside. After police asked him specifically if defendant was inside, he admitted it. He denied that the defendant had been chased by police into the apartment, or that he had been chased by police. Mr. Horton said defendant lived with a female in an apartment in the same housing development. Mr. Horton was positive that police detained him before noon, because the “Young and Restless” was on teleyision. .
Det. Robert Ferrier, recalled as a witness by the defendant, testified again that defendant was arrested at 1:35 p.m., as reflected by the police report. He said he did not come to work on July 5 until 11:25 a.m., and that he routinely worked from 11:25 a.m. until 8:00 p.m.

REVIEW FOR ERRORS PATENT; DEFENDANT’S SECOND ASSIGNMENT OF ERROR NO. 2

A review of the record reveals one error patent. The trial court sentenced the defendant to five years at hard labor without benefit of parole, probation or suspension of sentence. Defendant was sentenced pursuant to La. R.S. 40:966(B)(1), as amended by Acts 2001, No. 403, § 4, effective. June 15, 2001, which provides for denial of the benefits of probation and suspension of sentence only, not parole. Accordingly, we amend the defendant’s sentence to eliminate the denial of the benefit of parole.
DEFENDANT’S FIRST ASSIGNMENT OF ERROR: The trial court erred in denying defendant’s motion for mistrial, based on improper comments by the State during closing argument.
Defendant cites several instances when he objected to comments made by the prosecutor. However, in only one instance did defense counsel move for a mistrial. The prosecutor referred to defense counsel’s haying stated during voir dire that the police officers violated defendant’s rights. Defense counsel objected, whereupon. the trial court sustained the objection. The prosecutor told the jury that they were the “force” today, and that defendant was not the victim, but that “we’re the victims.” Defense counsel objected again, and the trial court sustained the objection. Defense counsel then moved for a mistrial, which was denied.
The scope of closing argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the argument of the defendant.” La.C.Cr.P. art. 774. Prosecutors may not resort to personal experience or turn argument into a plebiscite on crime. State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716. However, prosecutors have wide latitude in choosing closing argument tactics. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036, citing State v. Martin, 539 So.2d *128 1235, 1240 (La.1989) (closing arguments that referred to “smoke screen” tactics and defense as “commie pinkos” inarticulate but not improper). Furthermore, the trial judge has broad discretion in controlling the scope of closing arguments. Id. Even if the prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless “thoroughly convinced” that the argument influenced the jury and contributed to the verdict. State v. Ricard, 98-2278, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397. Even where the prosecutor’s statements are improper, credit should be accorded to the good sense and fairmindedness of the jurors who heard the evidence. Williams, supra; Ricard; supra.
The only applicable mistrial provision is La.C.Cr.P. art. 775, which states, in pertinent part, that a mistrial shall be granted whenever prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial. According credit to the good sense and fairmindedness of the jurors who heard the evidence, it cannot be said that the prosecutor’s comment that the defendant was not the victim, but that, in effect, society was, made it impossible for the defendant to obtain a fair trial. Accordingly, the trial court properly denied the motion for mistrial.
In one of the other instances objected to by defense counsel, the prosecutor stated, with reference to Det. Ferrier’s position during his surveillance, that there was no question in his mind about Det. Ferrier’s position, and that the reason it did not come out during trial was because it may be used later. Defense counsel objected on the ground of a comment on facts not in evidence, which objection was overruled. Defendant cites authority for the proposition that it is reversible error when a prosecutor prejudicially refers to matters allegedly within his personal knowledge, which are not in the evidence. However, it was apparent that the prosecutor was merely speculating. It is true that Det. Ferrier’s observations were crucial, in that he was the only person who observed defendant exercising dominion and control over the magnetic box containing the thirty-three foils of heroin. However, once again crediting the good sense and fair-mindedness of the jurors who heard the evidence, we are not thoroughly convinced that the prosecutor’s speculative comment influenced the jury and contributed to the verdict. Therefore, there is no reversible error as to this comment.
Defendant also objected to the prósecutor’a having referred to the officers being in the courtroom for one reason, because they started the investigation. The objection was overruled. Lastly, defendant complains of the prosecutor’s comment made in rebuttal to defense counsel’s argument that a conviction would impinge upon defendant’s freedom. The prosecutor asked rhetorically, “We’re trying to take away his freedom. What about my freedom?” Again, crediting the good sense and fairmindedness of the jurors who heard the evidence, we are not thoroughly convinced that these comments by the prosecutor influenced the jury and contributed to the verdict. ,
There is no merit to any part of this assignment of error.

CONCLUSION AND DECREE

For the foregoing reasons, we affirm defendant’s conviction and amend his sentence to delete the denial of the benefit of parole, and that the sentence be affirmed as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.