DANIEL L. DYSART, Judge.
| .STATEMENT OF THE CASE:
Defendant, Gerrod Allen, was charged by bill of information with distribution of cocaine, a violation of La. R.S. 40:967(B)(4)(b).[1] A twelve-person jury found Defendant guilty as charged. Defendant was subsequently sentenced to nineteen years at hard labor with the Department of Corrections, to run concurrently with any other sentence, with credit for time served. The State filed a multiple bill, charging Defendant as a multiple offender for having a prior conviction for possession of marijuana, second offense. Defendant pled guilty to being a multiple offender, and Defendant was resentenced to nineteen years in the Department of Corrections with credit for time served.
This appeal followed. Also, pursuant to Defendant’s pm se request, this Court sent him the record to allow him to file a brief; however, he failed to do so.
DISCUSSION:
The sole assignment of error by Defendant is that the prosecutor’s improper comments and arguments in his closing argument influenced the jury and contributed to the verdict and deprived Defendant of a fair trial. Specifically, | ^Defendant argues that the prosecutor personally attacked Defendant’s counsel, vouched for the State’s witnesses, and attempted to shift the burden of proof to the defense. Defendant contends that this Court should vacate his conviction and sentence and remand the case for a new trial.
“The general rule concerning the scope of closing arguments is that they are confined to ‘evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.’ ” State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036 (quoting La.Code Crim. Proc. art. 774).
This Court recently recognized the well-settled rule that prosecutors are allowed wide latitude with regard to strategy and tactics used in closing argument:[2]
*678 Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. See, e.g. State v. Martin, 539 So.2d 1235, 1240 (La.1989); State v. Copeland, 530 So.2d 526, 545 (La.1988). Even assuming that remarks were inappropriate, a conviction will not be reversed due to an improper remark during closing argument unless the court is thoroughly convinced that the remark influenced the jury and contributed to the verdict. Much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the arguments, and have been instructed by the trial judge that arguments of counsel are not evidence. State v. Kyles, 513 So.2d 265, 275-76 (La.1987).
State v. Smith, 11-0091, p. 28 (La.App. 4 Cir. 7/11/12), 96 So.3d 678, 694-95, reh’g denied (8/16/12), writ denied, 12-2069 (La.3/15/13), 109 So.3d 375 (emphasis added).
Furthermore, “even when prosecutors have exceeded that latitude, courts have often criticized the improper arguments without finding that they constituted reversible error.” Id. (citing State v. Byrne, 483 So.2d 564, 575 (La.1986)). Likewise, “even if the prosecutor exceeds these bounds, the court will not reverse a conviction unless ‘thoroughly convinced’ that the argument influenced the jury and contributed to the verdict.” State v. Casey, 99-0023, p. 17, 775 So.2d at 1036 (citing State v. Martin, 93-0285, p. 17 (La.10/17/94), 645 So.2d 190, 200; State v. Jarman, 445 So.2d 1184, 1188 (La.1984); State v. Dupre, 408 So.2d 1229, 1234 (La.1982)).
Defendant concedes that in the closing argument for the defense, defense counsel argued that there were discrepancies in the accounts provided by the three police officers who testified at trial. Defense counsel also remarked that the State only called three out of the fifteen officers who participated in the operation.[3] |4Pefense counsel also argued that there were mistakes in the police report, that the video recording of the transactions had no audio, and that the State did not produce the *679 twenty-dollar bill in NOPD funds that was recovered on Defendant’s person.
Defendant asserts that the State in rebuttal argued that defense counsel accused the State of hiding something, and made personal attacks on defense counsel. Specifically, Defendant cites the following remarks made by the prosecutor:
We picked you all as jurors because we trust you and I trust my case. I have been up front and honest with you from the beginning and there is not a single thing I want to hide from any of you.
I would submit to you that someone— there are two individuals ladies and gentlemen who all day have been trying to ... trick you and who have been lying to you and they are sitting at that table. [Counsel for Defendant]:
Objection, personal.
THE COURT:
Sustained.
No personal attacks, sir.
Defendant also cites the following remarks made by the prosecutor:
You know another part of this case that truly bothered me is the comment made by defense counsel. They said, oh, the State should be able to bring you that money. The State should be 1 sable to bring you the cash. We are going to be able to show you that cash. It was just a ploy to mislead you.
And then, I want to call my investigator, Mr. Fitzgerald to simply explain why we can’t provide those dollar bills. And what do I get? Objection! And I’m hiding something? I’m trying to mislead you all? That’s who is hiding something and the reason they are hiding something ladies and gentlemen is because they are sitting next to a guilty man.
[Counsel for Defendant]:
We have no burden!
THE COURT:
They know that, ma’am. You don’t have to tell us that.
[Counsel for the State]:
I didn’t say they had a burden.
Once again, I have the burden in this case. Me and Mr. McAuliffe have the burden in this case to prove the case beyond a reasonable doubt in case there is any confusion about that.
Additionally, Defendant asserts that the prosecutor made the following personal attack on counsel for Defendant:
I am not here to waste peoples [sic] time. I’m here to get a drug dealer off the streets and that is what they are sitting next to. And that’s what they know he is.
[Counsel for Defendant]:
Objection!
THE COURT:
Sustained. Let’s wrap it up, sir.
The Louisiana Supreme Court has recognized that the State should refrain from making personal attacks on defense strategy and counsel.[4] State v. Brumfield, *680 96-2667, p. 9 (La.10/20/98), 737 So.2d 660, 663; State v. Duplessis, 457 So.2d 604, 609 (La.1984). In State v. Manning, 03-1982, p. 75 (La.10/19/04), 885 So.2d 1044, 1108, the defendant contended that the following rebuttal remarks constituted prosecutorial misconduct:
And let me touch on a few things here, ladies and gentlemen, that Mr. Lawrence brought out in his closing. We’re all familiar with the Wizard of Oz. You remember how Dorothy and the strong man and the lion and all of that were going down the yellow brick road, looking at the almighty Oz, this wonderful man or being; had all powers. And you remember when they finally go there what it was; a little old short round guy with a bald head standing behind a curtain. It was all smoke and mirrors. All smoke and mirrors.
The defendant failed to object, however, and the Louisiana Supreme Court noted that the claim had been waived, but found that in making the above remarks, the prosecutor was simply referring back to arguments set forth by defense counsel:
Again, however, defendant lodged no objection to the guilt phase rebuttal argument and waived any claim based on it. La.Code Crim. Proc. Ann. art. 841. While the State should refrain from making personal attacks on defense strategy and counsel, State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660, 663, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999); see also State v. Duplessis, 457 So.2d 604, 609 (La.1984) (State’s comment that “a bus full of witnesses would not be enough for defense counsel because he was a ‘very skillful lawyer’ ” improper), in this case, it appears the State was neither making complimentary nor disparaging comments about counsel, but rather referring to the merits of arguments set forth on defendant’s behalf.
Id., 03-1982, p. 75, 885 So.2d at 1108.
Similarly, in State v. Fradieu, 02-0077, pp. 14-15 (La.App. 4 Cir. 6/25/03), 851 So.2d 345, 354, the defendant argued that the following prosecutorial remarks in closing argument were improper:
By Ms. Maloney [ADA]:
It is Mr. Wainwriglit’s job to stand before you and mislead you and confuse you and do anything to earn the fee that he was paid, [emphasis added]
By Mr. Wainwright:
Mistrial.
By the Court:
Denied.
By Mr. Wainwright:
This is improper argument. It’s been adjudicated by many appellate courts and I don’t know what she thinks she’s doing at this point, Judge—
By the Court:
Keep to the evidence, Ms. Maloney.
This Court found that, considering the wide latitude allowed during closing argument together with the defendant’s right to an admonition from the trial court, the defendant was not prejudiced by the prosecutor’s remarks, and distinguished the above comments from the factual scenario in State v. Duplessis and other jurisprudence upon which the defendant relied:
The court in Duplessis found reversal was necessary not because of the prosecutor’s personal attack on defense counsel but due to the cumulative nature of errors during closing argument. The trial judge in Duplessis permitted the prosecutor to make inappropriate comments, failed to give an admonition to *681 the jury, and told defense counsel not to interrupt the prosecutor’s closing argument. In the instant case, the trial judge allowed defense counsel to object numerous times during closing argument, admonished the jury when appropriate, and cautioned the prosecutor to confine argument to the evidence.
The defendant also attempts to distinguish more recent cases, in which the prosecutor’s personal attack on defense counsel, albeit |8inappropriate, did not rise to the level of reversible error. In State v. Bridgewater, 2000-1529 (La.1/15/02), 823 So.2d 877, the prosecutor made the following remarks during closing argument:
Well, he hires himself a good lawyer and he gets a lawyer that’s going to be able to take that intent thing and kind of twist it around and hope that he can play the odds — ... he knows that the odds aren’t good that all 12 of you are going to buy this nonsense that he had no intent to kill anybody.
Bridgewater, 2000-1529, fn. 32, 823 So.2d 877, 917. The court in Bridgewa-ter found that while “prosecutors should refrain from personal attacks on defense strategy and counsel, a comment that suggests the state carried its burden despite defense attempts to show otherwise, even if improper, is not reversible error.” Bridgewater, 2000-1529, p. 33, 823 So.2d 877, 903.
The defendant in the instant case argues that the comment in Bridgewater was not as egregious as that in the instant case. While the comment by the prosecutor in the instant case was more direct, the concept was the same: a personal attack on defense strategy and counsel, a comment that the state carried its burden of proof despite defense attempts to show otherwise. In the context of the trial court’s balancing of the prosecutor’s wide latitude during closing and the defendant’s right to an admonition as a result of impermissible argument, the defendant was not prejudiced.
Fradieu, 02-0077, pp. 16-18, 851 So.2d at 355-56 (emphasis added).
As previously noted, in this case, the trial court admonished the prosecutor at the time of the defense’s objection. Additionally, the trial court instructed the jury that the closing arguments were not to be considered as evidence:
This is argument ladies and gentlemen. As I told you before it is not evidence. It’s there [sic] appreciation of what the evidence showed. And I make you a promise, their appreciations aren’t even close to one another which is a promise I made an[d] kept.
Likewise, in response to a defense objection during the State’s rebuttal, the trial court stated:
Ladies and gentlemen, again, in fulfillment of my promise they see things one way. The other side sees it the other way. You know what? Every trial would be a draw without you. That’s why we have |syou. We are going to rely on your memory as to what was said and what wasn’t said.
Although the prosecution’s personal attacks against defense counsel were improper, the trial court admonished the prosecutor and instructed the jurors that arguments of counsel are not evidence. See State v. Smith, 11-0091, p. 28, 96 So.3d at 694-95. The trial court also sustained most of the objections. Furthermore, Defendant did not ask for a mistrial. Thus, it was not error for the trial court not to grant what Defendant did not request. Accordingly, we do not find that Defendant was prejudiced by the remarks or that the *682 remarks influenced the jury and contributed to the verdict.
Defendant also argues that the prosecutor improperly attempted to shift the burden of proof by making the following remarks:
But apparently during closing arguments we learned something else. We learned that Gerrod Allen allegedly knew those people in that house on North Robertson. He knew them all and they were fíne with him being there. A packed house of people on North Robertson Street that can corroborate this mans [sic] innocence. His friends allegedly can corroborate this mans [sic] innocence. How many of them did you hear from?
Defendant contends that defense counsel only argued in closing that the residents consented to the search of the house and that the police found no drugs in the residence. However, a review of the transcript evidences that counsel for Defendant argued that Defendant knew the individuals in the residence and that Defendant was sitting with them watching television when Detective Lainez walked into the residence:
So he says, the detective, [Defendant] walks into the house. When he goes into the house he sits down. So Detective Lainez finds Gerrod Allen sitting down in the house. He said nobody started screaming and carrying on until Detective Lainez got there.
|inSo the people in the house did not feel they were in jeopardy by Gerrod being there. Gerrod Allen knew them. He went down and sat down and was watching TV in these people’s house—
Accordingly, it appears that the State was responding to the defense’s argument that Defendant knew the individuals in the residence. Additionally, counsel for Defendant contemporaneously objected to the prosecutor’s argument that the defense did not call any of the individuals in the residence where Defendant was arrested, stating, “[w]e don’t have to bring them,” and the trial court sustained the objection. As previously noted herein, Defendant did not request a mistrial; thus, the trial court gave Defendant the only relief that he requested. Furthermore, although the trial court did not admonish the prosecutor in this particular instance, the trial court sustained the defense’s objection that Defendant did not have to call the individuals in the residence as witnesses.
Defendant further argues that the prosecutor improperly vouched for the State’s witnesses, implying that the police officers were credible, stating:
I want to know why just out of nowhere they just framed this man? Why? They had a great case. They got Reginald McCoy on video. They got Tamar-cus Barber in the car. Why all of a sudden are they just lying to frame this innocent man? I mean do they have it out for him? They haven’t even seen him before. What is their motive to get here and risk their careers and lie on this man?
Defendant further contends that the prosecutor specifically vouched for Detective Burke by stating, “[h]e brought you all the truth. He was open and honest with you.” Finally, Defendant asserts that the prosecutor vouched for the credibility of all three officers who testified by stating the following:
The bottom line is ladies and gentlemen you believe those individuals are lying, then find him not guilty. Those are three of the most decorated detectives on that force. If you believe they are lying to you then spring him free and do it fast. But I submit to you ladies and *683 gentlemen they are not lying to you. They told you what they saw and brought you the truth.
In State v. Everett, 11-0714, p. 37 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 631, writ denied, 12-1593 (La.2/8/13), 108 So.3d 77, and writ denied, 12-1610 (La.2/8/13), 108 So.3d 77, this Court recognized that “[c]omment on the credibility of witnesses ... is proper and within the scope of closing argument.” (citing La.Code Crim. Proc. art. 774 and State v. Sayles, 395 So.2d 695 (La.1981)). Likewise, in State v. Riley, 05-1311, pp. 7-8 (La.App. 4 Cir. 9/20/06), 941 So.2d 618, 622-23, this Court noted that if the record contains facts that bear upon a witness’ credibility, commentary regarding credibility of witnesses is not improper:
General comments on the credibility of a witness are not prohibited if the record contains facts which bear on the witness’s credibility. State v. Sayles, 395 So.2d 695 (La.1981). In State v. Smith, 554 So.2d 676, 681 (La.1989), the Court stated:
[I]t has consistently been held to be reversible error for the prosecutor to express his belief in the guilt of the accused, or the credibility of a key witness, where doing so implies that he has additional knowledge or information about the case which has not been disclosed to the jury. State v. Kaufman, [304 So.2d 300 (La.1974) ]; State v. Harrison, 367 So.2d 1 (La.1979); State v. Hamilton, 356 So.2d 1360 (La.1978); State v. May, 339 So.2d 764 (La.1976) (recognizing the stated rule but finding that the prosecutor’s comment did not imply to the jury that he had personal knowledge of facts not presented to them indicating the defendant’s guilt)....
As previously noted herein, the trial court instructed the jury that the closing arguments were not to be considered as evidence. Additionally, a review of the transcript evidences that counsel for Defendant failed to contemporaneously object to any of the three statements cited above. Therefore, Defendant has waived any claim based on prosecutorial misconduct with respect to the three statements cited above. See La.Code Crim. Proc. art. 841; State v. Robinson, 01-1305, p. 14 (La.App. 4 Cir. 4/17/02), 820 So.2d 571, 580. As noted by this court in State v. Taylor, 91-2496, p. 5 (La.App. 4 Cir. 3/29/94), 635 So.2d 416, 420, “[t]he contemporaneous objection rule exists, not only so that a trial judge may correct the error at the time it is made, but it also serves notice in the record that the complained of conduct was so noticeable as to create prejudice in the minds of the jurors.”
Defendant contends that the prosecutor’s comments in this case are similar to remarks made by a prosecutor in U.S. v. Gracia, 522 F.3d 597 (5th Cir.2008), wherein the appellate court found that prosecutorial remarks[5] were improper. *684 The Gracia court found that the improper remarks constituted “witness bolstering,” as the prosecutor “unacceptably placed the government’s weighty stamp of approval on the only evidence” of the defendant’s guilt — the border patrol agents’ testimony. Gracia, 522 F.3d at 604, 606. However, Defendant relies upon Gracia by comparing the prosecutor’s statements in that case to the prosecutor’s remarks in this case regarding the honesty of the testifying officers. As previously noted, Defendant failed to contemporaneously object to the prosecutor’s remarks in that [ 1sregard. Furthermore, the Gracia court used a “plain error” standard, while Louisiana jurisprudence requires a contemporaneous objection to preserve an issue for appeal. This argument lacks merit.
CONCLUSION:
Assuming arguendo that the prosecutor’s remarks were improper, Defendant has not demonstrated that the remarks contributed to the verdict. The remarks made by the prosecutor in this case fall under the wide latitude afforded to parties making closing arguments. Giving credit to the good sense and fair-mindedness of the jurors who heard the arguments and evidence, it is unlikely that any of the objected-to remarks by the State in this case influenced the jury and contributed to the verdict. See State v. Robinson, 01-1305, p. 14, 820 So.2d at 580.
Accordingly, we affirm Defendant’s conviction and sentence. See State v. Casey, 99-0023, p. 17, 775 So.2d at 1036.[6]
AFFIRMED.

. The violation is erroneously listed on the minute entry as La. R.S. 40:967(B)(1).

. The Louisiana Supreme Court cited the following Louisiana jurisprudence as an exam-pie of a prosecutor’s wide latitude in employing closing argument tactics:
Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. *678 See State v. Martin, 539 So.2d 1235, 1240 (La.1989) (holding closing arguments that referred to "smoke screen” tactics and defense as "commie pinkos” inarticulate but not improper); State v. Copeland, 530 So.2d 526, 545 (La.1988) (holding prosecutor’s waving gruesome photo at jury and urging members to look at it if they became "weak kneed” during deliberations as not improper). Further, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Prestridge, 399 So.2d 564, 580 (La.1981)
State v. Casey, 99-0023, p. 17, 775 So.2d at 1036.

. Defense counsel argued in part:
Another issue I want to point out to you all and this is one of the main things that offends me so much about this case. Detective Washington told you all that he did not know who was giving the description over the dispatch. [H]e said he thin[k]s that it was Detective Barnes but he’s not certain. Not only that[,] he doesn't remember the description that was given. What is offensive about that is that they know those officers. They are not hiding. They are not out of the country. They have called three of the 15 officers that played a role in this investigation.
[Counsel for the State]:
Judge, we would just object. They have the power to call the other 12 and never—
[Defense counsel]:
It's not our burden!
[Counsel for the State]:
Absolutely not—
THE COURT:
Quit talking to one another. Ya’ll are driving me nuts. I am going to send these people home and I am going to put you all in the back. I have had enough.
Your objection is sustained.
Anybody can call anybody.

. In State v. Brumfield, 96-2667, p. 9, 737 So.2d at 663, the prosecutor argued in closing that "during the course of this trial those very police officers who go about and try to protect us every day have been assailed [on cross-examination by defense counsel], have been defamed through the allegations of this defendant when he is the person who is on trial." The Louisiana Supreme Court found that the prosecutor’s argument was not improper, holding that although the State should refrain from making personal attacks on defense strategy and counsel, "the prosecutor’s statement about defense counsel’s cross-examination of police officers was a fair comment pointing out the frequently used strategy of *680 attempting to shift the focus from the accused to the accuser.” Id.

. In United States v. Gracia, 522 F.3d 597, 600 (5th Cir.2008), the defendant asserted the following claims:
Gracia points to four remarks by the prosecutor that bolstered the credibility of the agents who interviewed him. First, the prosecutor expressed his opinion to the jury that the agents were "very, very credible” witnesses ("Statement One”). Second, the prosecutor asked the jurors rhetorically whether they thought that an agent “who has worked as a law enforcement agent for many years, that is his career, that is his chosen life, a man from this area, a man with a family, do you think that he would throw all that away by taking this stand and taking an oath and lying to you to get Mr. Gracia”; and whether the agents "would put their careers and criminal prosecution on the line for committing the offense of aggravated perjury” ("Statement Two”). Third, the prosecutor told the jury: "I’m *684 going to ask you to respect their efforts as law enforcement officials and to believe the testimony that they offered” ("Statement Three”). Fourth, the prosecutor admonished the jurors that, to acquit Gracia, they would have to believe that the agents "got out of bed” on the day they arrested Gracia and decided that this was "the day that [they] were going to start [a] conspiracy to wrongfully convict Mr. Gracia” ("Statement Four”).

. A review of the record reveals an error patent with respect to sentencing in that the sentence was illegally lenient because the trial court failed to impose the sentence without benefit of probation or suspension of sentence. With regard to illegally lenient sentences, this Court has recognized that the statute is self-correcting. State v. Tillman, 10-1717, p. 3 (La.App. 4 Cir. 9/28/11), 74 So.3d 761, 763 (citing State v. Phillips, 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675). Accordingly, this Court need take no action with regard to the trial court’s failure to impose the sentence without benefit of probation or suspension of sentence.