STATE OF LOUISIANA     *     NO. 2023-KA-0771

VERSUS     *

MICHAEL R. SHORTS, JR.     *

COURT OF APPEAL

FOURTH CIRCUIT

* 

STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 549-715, SECTION "A"
Honorable Simone A. Levine
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Dale N. Atkins)

**LEDET, J., CONCURS IN THE RESULT**
**ATKINS, J., CONCURS IN THE RESULT**

Jason R. Williams
District Attorney
Parish of Orleans
Brad Scott
Chief of Appeals
Zachary M. Phillips
Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE
619 South White Street
New Orleans, LA 70119

     COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Christopher J. Murell
Meghan K. Matt
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, LA 70117

     COUNSEL FOR DEFENDANT/APPELLANT

                                     **AFFIRMED**
                                     **MAY 8, 2025**

Michael Shorts ("Mr. Shorts") seeks appellate review of his convictions and sentences for second degree murder and obstruction of justice. For the reasons that follow, Mr. Shorts' convictions and sentences are affirmed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 1, 2020, Mr. Shorts was indicted for second degree murder (La. R.S. 14:30.1) and obstruction of justice (La. R.S. 14:130.1). The following facts were presented at trial.

On January 27, 2020, around 3:00 p.m., police responded to multiple 911 calls reporting a shooting in the 1900 block of South Rendon Street in New Orleans. Witnesses described hearing multiple gun shots and observing a black male suspect leaving the scene.

The victim, Emanuel Varnado, was found lying on the sidewalk, suffering from multiple gunshot wounds. Emergency Medical Services transported him to the hospital, where he was later pronounced dead. The autopsy report indicated

that the victim died from multiple gunshot wounds.

Initial statements of neighbors in the area indicated that the shooting occurred following a verbal altercation. Sabrina Toliver testified that from her living room she heard two people arguing outside and looked out the window to see an individual wearing a hooded sweatshirt and holding a white bag. Frightened, she retreated further into her home where she could hear more gun shots. Larry Williams testified to also hearing gunshots. From his carport, he observed a black male wearing a gray hooded sweatshirt and a red cap approach and shoot the victim lying on the ground. Antonie Payne testified that when she looked out from her porch, she witnessed a male reach inside the trash can on the side of her house and walk away.

Surveillance footage from that day captured a black male walking away from the scene immediately after the shots were fired and the first 911 call was made. Based on Ms. Payne's statements to police, they were able to collect physical evidence found inside Ms. Payne's trash can including a black glove, a nine-millimeter bullet shell casing, and a tattered "busted out" pillow. Police determined that the bag the shooter was seen holding was actually the pillow they later discovered in the trash can.

As part of his investigation, Detective Nikolas Davis ("Detective Davis") spoke with a "Mr. Eugene," who lived a few houses down from where the shooting took place. Mr. Eugene, who is the defendant's grandfather and the victim's stepfather, initially cooperated with the investigation. Although he did not witness

2

the shooting, he told police he knew that "Mike Mike" was the shooter because he was the only one outside when the shooting occurred. Mr. Eugene later refused to cooperate with the investigation.

Detective Davis identified Michael Shorts as "Mike Mike." In a recorded phone call, the detective interviewed Mr. Shorts about his actions on January 27, 2020. Mr. Shorts stated that around 2:45 p.m. on the day in question he went to his grandfather's house to retrieve some clothing. He told Detective Davis his visit was "real brief" and that he did not see the victim while he was there.

Police executed a search warrant of Mr. Shorts' residence and found an empty nine-millimeter magazine; six nine-millimeter live rounds consistent with the spent shell casings found at the crime scene; and an empty box for a nine-millimeter handgun. Officers were able to identify the store the box came from. Documentation retained by the gun store indicated that Mr. Shorts had purchased a nine-millimeter firearm in October 2017. The gun store owner testified at trial to Mr. Shorts' gun purchase and verified that the gun box found in Mr. Shorts' residence came from his store.

Detective Davis testified that he had enough evidence to obtain an arrest warrant for Mr. Shorts based on "numerous statements from [defendant's] family" when they were still cooperating with the investigation that "Mike Mike did it." Additionally, Mr. Shorts was identified as "Mike Mike" and matched the physical description of the shooter observed walking away from the scene. Furthermore, the live rounds found at Mr. Shorts' home matched the make and model of the live

rounds located inside the pillow case found in the neighbor's trash can.

Following a jury trial, Mr. Shorts was found guilty as charged. Mr. Shorts filed a motion for new trial on grounds of improper hearsay, improper closing arguments, improper expert testimony, and newly discovered evidence. He also argued that an outdated jury summons that excluded convicted felons for jury service resulted in an improper constituted jury venire. The trial court denied Mr. Shorts' motion for new trial. The trial court thereafter sentenced Mr. Shorts to: life imprisonment without the benefit of parole, probation, or suspension of sentence for the second-degree murder conviction; imposed a five-year sentence at hard labor with credit for time served for the obstruction of justice conviction; and ordered the sentences to run concurrently. His appeal to this Court followed.

### ERRORS PATENT

A review of the record detected one error patent regarding the grand jury indictment. The prosecution of "an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury." La. C.Cr.P. art. 382(A). Pursuant to La. C.Cr.P. art. 383, the indictment must be "indorsed 'a true bill', and the indorsement must be signed by the foreman." The indictment contained in the record does not reflect the signature of the grand jury foreperson. While the record includes a copy of the front of the indictment, it does not contain a copy of the back, where the grand jury foreperson would have signed.

This Court addressed the same issue in *State v. Lopez*, 17-1028, *unpub.*, (La. App. 4 Cir. 3/14/18), 2018 WL 1312942, wherein a copy of the back of the

4

indictment was not in the record. However, the district court's minute entry reflected that the grand jury indictment charging defendant "was returned in open court…and was signed by the grand jury foreperson." *Id*., 17-1028, p. 4, 2018 WL 1312942 at *2. The same is true in this case. The record contains the district court's minute entry reflecting that the grand jury indictment charging Mr. Shorts was returned in open court on August 27, 2020, and was signed by the grand jury foreperson.

In *Lopez,* this Court found no intervention was warranted "where the district court's minutes reflect 'that a true bill was returned and the grand jury return of indictments reflects that [it] was signed by the grand jury foreperson.'" *Id.* (quoting *State v. Hawkins*, 16-0458, p. 13 (La. App. 4 Cir. 5/17/17), 219 So.3d 1133, 1141). Because the court minutes reflect the indictment was returned in open court and signed by the jury foreperson, we find no reversible error.

### *DISCUSSION*

Mr. Shorts appeals his convictions and sentences raising (14) assignments of error. While we find no merit to Mr. Shorts' assigned errors[1], this opinion will address the most significant of these assignments of error.

---

[1] On appeal, Mr. Shorts raises the following assignments of error, some of which overlap:
1. The record on appeal is not complete because it is missing crucial defense exhibits admitted in Appellant's motion for new trial hearing.
2. The trial court erred in not enforcing subpoenas of witnesses Appellant sought to call at the motion for new trial hearing.
3. The trial court erred in not recessing or leaving open the motion for new trial hearing to permit Appellant to adequately develop evidence to support his claims in his Motions for New Trial.
4. The trial court erred in finding that the evidence presented did not show persons with a prior felony are a "distinctive group" for far cross-section purposes.
5. The trial court erred in not finding that persons with prior felonies were systematically excluded by the district court's petit jury pool composition prior to January 13, 2023.

### *Jury Venire Composition*

In assignments one through eight, Mr. Shorts claims he is entitled to a new trial based on the district court's exclusion of felons from his jury venire in violation of La. C.Cr.P. art. 401(A)(5), which allows previously convicted felons to serve on juries after five years from the end of their incarceration, probation, or parole term. Mr. Shorts contends that the jury venire was improperly constituted due to the exclusion of convicted felons, and therefore, depriving him of a fair and impartial jury.

The record indicates that Mr. Shorts raised his jury venire challenge for the first time in his motion for new trial. Mr. Shorts neither filed a pretrial motion to quash the venire nor lodged an objection to the jury panel at the time of jury selection. The district court first considered the issue at the post-trial stage and ruled it procedurally barred.

---

6. The trial court erred in not finding a violation of Appellant's state and federal constitutional guarantees to a fair cross-section of jurors.
7. The trial court erred in not granting relief for an improperly constituted jury venire under La. C. Cr. P. art. 532(9).
8. The trial court erred in not finding the district court's failure to comply with Act 121 violation Appellant's state and federal constitutional due process rights.
9. The State eliciting out-of-court, unsworn, inculpatory statements from uncalled witnesses introduced through the lead detective violated Mr. Shorts' constitutional rights to Confrontation.
10. The trial court erred in not finding out-of-court, unsworn, inculpatory statements from uncalled witnesses introduced through the lead detective warranted a new trial.
11. The State eliciting out-of-court, unsworn, inculpatory statements from uncalled witnesses introduced through the lead detective violated Louisiana's statutory prohibition on hearsay.
12. The trial court applied the incorrect legal standard in determining whether the introduction of a nontestifying witness' inculpatory, unconfronted statements should warrant a new trial.
13. The trial court erred in not finding the State's prejudicial, improper closing arguments require a new trial.
14. The cumulative error in the trial and motion for new trial proceedings require vacating Appellant's conviction.

A defendant's failure at trial to lodge an objection regarding improper jury venire composition bars him from raising the issue on appeal. *State v. Scott*, 23-0022, p. 22 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 58; *State v. Bethley*, 22-0849, p. 16 (La. App. 4 Cir. 6/21/23), 368 So.3d 1148, 1159. In *State v. Curley*, the defendant failed to file a motion to quash the jury venire and like Mr. Shorts, raised his challenge in a motion for new trial. This Court denied the defendant's challenge to the jury venire because the issue was not raised prior to the commencement of trial pursuant to a motion to quash. *Id.*, 23-0498, p. 24 (La. App. 4 Cir. 3/18/24), 401 So.3d 23, 40.

Applying *Curley*, we find Mr. Shorts failure to lodge an objection as to the alleged improper composition of the jury venire precludes review of the issue on appeal. Even if the argument had been properly preserved, Mr. Shorts has not demonstrated that the jury venire resulted in actual prejudice or an unfair trial. There is no evidence that the State intentionally excluded eligible jurors or that the jury composition was fundamentally unfair. These assignments of error are without merit.

### *Hearsay Testimony*

Mr. Shorts next argues that Detective Davis improperly offered inadmissible hearsay testimony identifying Mr. Shorts as the shooter, violating his Sixth Amendment right to confrontation. "In all criminal prosecution, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const. amend. VI. Hearsay is "a statement, other than one made by the declarant while

7

testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. On appeal, Mr. Shorts cites three instances in which Detective Davis offered inadmissible hearsay.

First, Detective Davis testified that after the first day of his investigation, multiple family members identified "Mike Mike" as the shooter. Defense counsel did not object to this statement at trial. La. C.Cr.P. art. 841 states that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Therefore, the detective's statement that he developed Mr. Shorts as a suspect based on Mr. Shorts' identification by family members is waived on appeal.

Second, Detective Davis stated that he believed there was probable cause for an arrest warrant based on statements from family members and the physical evidence collected matching Mr. Shorts' purchase of a gun in 2017. Defense counsel objected to the admission of this statement as to where and when the gun was purchased, but not to the identification of Mr. Shorts. The State contends that Detective Davis' first two statements were admissible under the course-of-investigation doctrine, which allows an officer to explain the steps taken in an investigation leading to a defendant's arrest without the statements constituting hearsay.

In opposition, Mr. Shorts asserts that the course-of-investigation exception

to the hearsay rule has been rejected by the Federal Fifth Circuit as a violation of the Confrontation Clause. He cites *United States v. Hamann*, 33 F.4th 759, 770 (5th Cir. 2022), which held that an investigator's testimony about declarant's out-of-court statements implicating defendant in drug sales was inadmissible hearsay, rather than contextual background about his investigation. Mr. Shorts further contends that the Fifth Circuit has repeatedly vacated state and federal convictions based on the introduction of hearsay to explain law enforcement's investigation. *Id.*, 33 F.4th at 763, n. 1. This Court, however, is not bound by the Fifth Circuit precedent.[2] The course-of-investigation exception to the hearsay rule has not been rejected in the state courts, and it has not been rejected by this Court.

Detective Davis' testimony was not elicited for the truth of the matter asserted, but instead, to explain the course of his investigation and how he came to conclude he had sufficient evidence to obtain an arrest warrant for Mr. Shorts. Thus, we find this statement was admissible pursuant to the course-of-investigation exception to the hearsay rule.

Finally, Mr. Shorts complains of the detective's testimony, elicited on redirect examination, that Mr. Eugene told him that Mr. Shorts shot the victim. On cross-examination, defense counsel introduced the body-worn camera footage of another officer and played it for Detective Davis. The camera footage established that Mr. Eugene stated he did not know who shot the victim. On redirect, the State

---

[2] Decisions of the federal appellate courts, while considered persuasive, they are not binding on the courts of the state of Louisiana. *Beard v. Seacoast Elec., Inc.*, 06-1244, p. 4, 951 So.2d 1168, 1171.

asked Detective Davis what Mr. Eugene had told him. Detective Davis testified that Mr. Eugene "advised [him] that Mike Mike shot [the victim]. …He said he did not see it, but … when Mike left the residence, he heard the gunshots, and he was no longer there when he went outside…he just observed Mr. Varnado on the ground." Defense counsel objected to Detective Davis' testimony, and the trial court sustained the objection despite the State's argument that defense counsel opened the door on cross-examination.[3]

Mr. Shorts argues that even if the subject testimony, that he was the shooter, was not technically admitted into evidence, its effect on the jury could not be undone. *See State v. Lindsey*, 00-0301, p. 3 (La. App. 4 Cir. 4/11/01), 786 So.2d 814, 817 (hearsay testimony that defendant was the shooter was not admitted into evidence but defense counsel argued that "you can't unring the bell"). However, the trial judge specifically instructed the jury to disregard any evidence deemed inadmissible. The trial judge charged the jury, in pertinent part, as follows: "You must consider only evidence which was admitted during the trial. You may not consider evidence which you were instructed to disregard or to which an objection was sustained."[4]

Our jurisprudence presumes that a jury will follow the instructions of the trial judge when rendering its verdict. *State v. Smith*, 600 So.2d 1319, 1326, n. 7 (La. 1992) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709,

---

[3] As compared to Detective Davis' first two statements complained of on appeal, which spoke to the ongoing course of the police investigation, this particular statement was hearsay because it spoke to the substance of Mr. Eugene's statement.

[4] That Detective Davis' redirect testimony was hearsay, and as such, should not be considered, was emphasized during defense counsel's closing argument.

95 L.Ed.2d 176 (1987)); *Lege v. Union Carbide Corp.*, 20-0252, p. 19 (La. App. 4 Cir. 4/1/21), 365 So.3d 617, 633 (recognizing the presumption that a jury follows the court's instructions).  It is not that the jury is unaware of the testimony subsequently found to be erroneous, but that we presume jurors can and do follow instructions.  Thus, where Mr. Shorts has not cited, nor does the record reflect, any indication that the jury failed to follow the trial court's instructions, the record supports the conclusion that the testimony elicited on redirect examination was unimportant in relation to the totality of the evidence the jury considered.

It is well-established that the admission of hearsay and an alleged confrontation clause violation are subject to harmless error analysis.  *State v. Wille*, 559 So.2d 1321, 1332 (La. 1990); *State v. Edwards*, 21-0494, p. 18 (La. App. 4 Cir. 2/16/22), 336 So.3d 479, 490; *State v. Hart*, 10-1614, p. 5 (La. App. 4 Cir. 11/2/11), 80 So.3d 25, 30.  "The test for determining harmless error is whether the reviewing court may conclude the error was harmless beyond a reasonable doubt, i.e., was the guilty verdict actually rendered unattributable to the error."  *State v. Hughle*, 11-1121, p. 28 (La. App. 4 Cir. 11/7/12), 104 So.3d 598, 618 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).

In this case, footage from the real-time crime center camera captured an individual matching witnesses' description leaving the vicinity on foot almost immediately after 911 calls were placed reporting the shooting.  Mr. Shorts himself admitted to being at his grandfather's house shortly before the shooting occurred.

Also, DNA evidence established that Mr. Shorts could not be excluded as a major contributor to DNA found on the unstained portion of the pillow case discarded by the shooter, a fact that corroborates his presence on the scene. That same pillow and pillowcase, recovered from a nearby garbage container, contained blood stains that DNA testing determined originated from the victim, and was found alongside spent shell casings from a nine-millimeter firearm. Additional physical evidence also tied Mr. Shorts to the shooting including an empty nine-millimeter magazine recovered from his residence and a gun box that came from the gun store where Mr. Shorts had purchased a nine-millimeter firearm.

Viewed collectively, the foregoing evidence demonstrates that the jury's guilty verdict was surely unattributable to any error resulting from Detective Davis' testimony on redirect examination and therefore harmless.

### *Prosecutorial Misconduct in Closing Arguments*

In connection with the same redirect testimony, Mr. Shorts also contends the State made improper remarks during closing argument that constitute prosecutorial misconduct and warrant reversal of his convictions. He claims that the State wrongly suggested that the defense was trying to conceal evidence that inculpated him. The State's remark concerned defense counsel's hearsay objection to Detective Davis' statement that Mr. Eugene believed his grandson Mr. Shorts shot the victim. Specifically, that State argued:

> And when Mr. Ladd [one of the prosecutors] stood back up here and he said, Detective Davis, what else did Eugene tell you? Your Honor, I'm going to have to object to hearsay. That is disingenuous…They only want you to focus on that small portion of Eugene's statement.

12

> They want to hide the rest of that statement from you. But what is in evidence and what Detective Davis told you is when he spoke to Mr. Eugene…When he arrived on [the] scene and he talked to Eugene, [defendant's] grandfather, he says, Mike Mike did it. Michael Shorts, the defendant did it, his own grandfather.

Immediately following the State's remarks, defense counsel objected, and the trial court sustained the objection but did not grant a mistrial.

In *State v. Allen*, this Court explained that "the scope of closing arguments is…confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." *Id.*, 12-1757, p. 2 (La. App. 4 Cir. 10/9/13), 126 So.3d 675, 677 (cleaned up)[5]; La. C.Cr.P. art. 774. Prosecutors are given "wide latitude with regard to strategy and tactics used in closing argument." *Id.*, 12-1757, p. 2, 126 So.3d at 678. For that reason, the State argues that the remark was a fair response to the defense's argument that emphasized Mr. Eugene's statement that he did not know who shot the victim. As discussed above, the trial court properly sustained defense counsel's objection to the detective's redirect testimony; thus, the State's comments exceeded the bounds of proper argument.

Nevertheless, "even if the prosecutor exceeds these bounds, the court will not reverse a conviction unless 'thoroughly convinced' that the argument influenced the jury and contributed to the verdict." *Id.*, 12-1757, pp. 2-3, 126 So.3d at 678 (citing *State v. Smith*, 11-0091, p. 28 (La. App. 4 Cir. 7/11/12), 96 So.3d 678, 694-95). Considering all the evidence and testimony presented, the record does not support a finding that the State's comments influenced the jury's verdict.

### *Cumulative Effect*

---

[5] We use the parenthetical "cleaned up" in this opinion to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Finally, Mr. Shorts argues that even if the individual errors do not warrant reversal, their cumulative effect deprived him of a fair trial. Louisiana jurisprudence has consistently held that "harmless errors, however numerous, do not aggregate to reach the level of reversible error." *State v. Holiday*, 17-1921, p. 87 (La. 1/29/20), 340 So.3d 648, 714. Because none of Mr. Shorts' assigned errors warrant reversal, this assigned error also lacks merit.

### *CONCLUSION*

For these reasons, we affirm Mr. Shorts' convictions and sentences.

**AFFIRMED**