REVISED APRIL 15, 2008

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 31, 2008

Charles R. Fulbruge III
Clerk

No. 07-40245

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

APOLINAR GRACIA, JR.

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:06-cr-00006-2

Before WIENER, BARKSDALE, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Apolinar Gracia, Jr. traveled across the border bridge between Matamoros and Brownsville as a passenger in a car driven by an older female friend. The car contained approximately fifty kilograms of cocaine hidden in a false floor. A jury convicted Gracia on four related drug counts. Convinced that, during rebuttal closing argument, the government improperly bolstered its key witnesses, the agents who heard Gracia's unrecorded confession, and that this bolstering constituted reversible plain error, which seriously affected the fairness, integrity, and public reputation of those proceedings, we reverse Gracia's conviction and remand his case for a new trial.

## I. FACTS AND PROCEEDINGS

In December 2005, Gracia was a passenger in a gold Chevrolet Impala when it was stopped at the Brownsville and Matamoros ("B&M") International Bridge while crossing into Texas from Mexico. Driving the car was Oralia Valenzuela-Montoya, an older woman with whom it appears Gracia had a close, platonic relationship. When the Treasury Enforcement Communication System ("TECS") generated a "hit" on the Impala's license plate number, indicating that the car might contain illegal narcotics, border patrol agents referred the car to a secondary inspection area, where a detection dog alerted to the presence of drugs. Further investigation revealed a sophisticated hidden compartment in the floor of the vehicle which held forty-four packages containing a total of fifty kilograms of cocaine with an estimated street value of at least $500,000.

Gracia and Valenzuela-Montoya were escorted to separate interview rooms in which they were detained by agents. Some time later, the pair was formally placed under arrest after the discovery of the cocaine. Thereafter, at approximately 3:30 a.m., Agent Richard Perez began questioning Gracia following his waiver of his Miranda rights. At trial, Agent Perez testified that, from the beginning, Gracia agreed to provide the agents with a statement. Although Gracia had continued to deny that he knew the quantity or type of drugs contained in the Impala, he acknowledged he had been stopped and detained on this occasion because of a problem with either cocaine or marijuana in the Impala, and that he was to have received $1,000 for accompanying Valenzuela-Montoya in the Impala when it crossed the B&M Bridge.

Despite these disclosures by Gracia, Agent Perez believed that Gracia was "not being entirely truthful," so he had Valenzuela-Montoya brought into Gracia's interview room. According to Agent Perez, Valenzuela-Montoya urged Gracia "to tell the whole truth, so the agents could help them." Gracia contends that Valenzuela-Montoya also communicated a message to him through head

nods and eye signals, although the agents who were present dispute this account. Valenzuela-Montoya was then removed from Gracia's interview room.

According to the agents, Gracia was noticeably moved by Valenzuela-Montoya's visit, and volunteered that a man named Gerardo or Geraldo had made an arrangement with Gracia to transport the cocaine-laden Impala to Houston once it had cleared the border. Gracia provided details to Agent Perez about the history and method of the smuggling operation in which he had participated. The agents neither obtained a written statement from Gracia nor recorded his utterances. They did seize $1,000, but from Valenzuela-Montoya, not Gracia.

Early in 2006, Gracia was indicted in the Southern District of Texas on four counts: (1) conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); (2) possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1); (3) conspiracy to import more than five kilograms of cocaine in violation of 21 U.S.C. §§ 963, 952(a), and 960(b)(1); and (4) importation of more than five kilograms of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(b)(1). In March 2006, Gracia proceeded to jury trial, at the conclusion of which the jury returned a verdict of guilty on all four counts. A year later, the district court sentenced Gracia to concurrent terms of imprisonment of 168 months on each of the four counts, and concurrent five-year terms of supervised release on each. Gracia timely filed a notice of appeal.

## II. ANALYSIS

Gracia contends that three instances of prosecutorial misconduct at trial constitute grounds for reversal: The prosecutor's (1) references to Valenzuela-Montoya's guilt; (2) comments on Gracia's silence in custody and decision not to testify; and (3) bolstering of the agents' testimony during rebuttal closing argument. For the reasons set forth below, we agree that the prosecutor's

bolstering of the agents' testimony constituted reversible plain error. As we reverse and remand on this basis, we do not address whether the prosecutor's references to Valenzuela-Montoya's guilt and comments on Gracia's silence also constitute independent or cumulative grounds for reversal.

## A. Standard of Review

Gracia's trial counsel did not contemporaneously object to the prosecutor's comments regarding the agents' testimony,[1] so we apply the plain error standard of review.[2] To demonstrate reversible plain error, Gracia had to show that (1) there is error; (2) it is plain; and (3) it affected his substantial rights.[3] Even if he could meet that burden, we still would have discretion to decide whether to reverse, which we generally will not do unless the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceeding.[4]

---

[1] United States v. Mares, 402 F.3d 511, 515 (5th Cir. 2005). Gracia speciously asserts on appeal that he did, in fact, object to three of the government's four allegedly improper statements. After the prosecutor voiced two of his allegedly improper statements and before voicing allegedly improper statements three and four, Gracia did raise an objection. Gracia did not object, however, on the basis of improper witness bolstering, but because the facts introduced were not in evidence. Gracia's sole objection was thus completely non-topical, viz., unrelated to improper witness bolstering, and non-contemporaneous with all but one of the government's allegedly improper statements. For purposes of our determination of the applicable standard of review, Gracia did not make a valid contemporaneous objection to the government's allegedly improper statements. See United States v. Gallardo-Trapero, 185 F.3d 307, 322 n.7 (5th Cir. 1999) (holding that plain error review applied because defendant's attorney's objection, although raised, was based on topic unrelated to matter on appeal).

[2] We apply plain error review to allegedly improper comments for which there was no objection, as in the instant case. United States v. Fields, 483 F.3d 313, 360 (5th Cir. 2007) (citing Gallardo-Trapero, 185 F.3d at 321). In contrast, the trial court's admission of objected-to comments are reviewed for abuse of discretion, which involves two steps: (1) we must first decide whether the prosecutor made an improper remark and (2) if an improper remark was made, we must determine whether the remark affected the substantial rights of the defendant. Id. at 358 (citing United States v. Insaulgarat, 378 F.3d 456, 461 (5th Cir. 2004), cert. denied, No. 07-6395, 2008 WL 114089 (U.S. Jan. 14. 2008)).

[3] United States v. Jones, 484 F.3d 783, 792 (5th Cir. 2007) (citing Mares, 402 F.3d at 520).

[4] Mares, 402 F.3d at 520 (citing United States v. Cotton, 535 U.S. 625, 631 (2002)).

## B. Merits

Gracia points to four remarks by the prosecutor that bolstered the credibility of the agents who interviewed him. First, the prosecutor expressed his opinion to the jury that the agents were "very, very credible" witnesses ("Statement One"). Second, the prosecutor asked the jurors rhetorically whether they thought that an agent "who has worked as a law enforcement agent for many years, that is his career, that is his chosen life, a man from this area, a man with a family, do you think that he would throw all that away by taking this stand and taking an oath and lying to you to get Mr. Gracia"; and whether the agents "would put their careers and criminal prosecution on the line for committing the offense of aggravated perjury" ("Statement Two"). Third, the prosecutor told the jury: "I'm going to ask you to respect their efforts as law enforcement officials and to believe the testimony that they offered" ("Statement Three"). Fourth, the prosecutor admonished the jurors that, to acquit Gracia, they would have to believe that the agents "got out of bed" on the day they arrested Gracia and decided that this was "the day that [they] were going to start [a] conspiracy to wrongfully convict Mr. Gracia" ("Statement Four"). Gracia insists that these remarks constituted reversible plain error. The government concedes that Statements One and Three may have been improper, but nevertheless contends that all four statements were harmless error.

## 1. All four of the prosecutor's statements were errors.

We first turn to the question whether the statements at issue constituted error, defined as "deviation from a legal rule."[5] When we do, we conclude that each remark highlighted by Gracia indisputably was an improper, or erroneous, deviation from a legal rule. The Supreme Court's decision in Berger v. United States makes clear that a personal assertion by a prosecutor of a government

---

[5] Gallardo-Trapero, 185 F.3d at 322.

witness's credibility is impermissible.[6]   The American Bar Association's standards for prosecutors echo this sentiment:  "The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."[7]  The government may not cloak a witness in its "protective mantle."[8]  A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses.[9]

As the government concedes, it is impermissible per se for a prosecutor to offer personal assurances to the jury that government witnesses are telling the truth, as in Statement One,[10] or to tell the jury that law enforcement witnesses should be believed simply because they were doing their job, as in Statement Three.[11]

---

[6] 295 U.S. 78, 88 (1935) ("It is fair to say that the average jury . . . has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed.  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."); see also United States v. Young, 470 U.S. 1, 18-19 (1985) ("The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers:  such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.").

[7] ABA Criminal Justice Section Standards, Argument to the Jury, Standard 3-5.8.

[8] Gallardo-Trapero, 185 F.3d at 320.

[9] Id.

[10] Berger, 295 U.S. at 88; see also Hodge v. Hurley, 426 F.3d 368, 378-80 (6th Cir. 2005) (holding that two statements by prosecutor commenting on veracity of two key witnesses, including remark that one of witnesses and her family were "absolutely believable" were improper and constituted plain error).

[11] United States v. Brown, 451 F.2d 1231, 1236 (5th. Cir. 1971) (court reversed conviction because prosecutor improperly remarked in closing argument that he thought agent/witness did "a real good job" and "was doing his duty to his country").

Although the government does not concede that Statements Two and Four were errors, we cannot meaningfully distinguish the prosecutor's admittedly improper remarks and those that the government does not concede were errors. All four statements urge conviction based not on the objective evidence before the jury or its independent judgment of the witnesses' credibility, but on something uniquely within the prosecutor's knowledge. We have held it improper for a prosecutor to ask a jury the rhetorical question whether federal agents would risk their careers to commit perjury, as in Statement Two.[12] We have deemed improper an unequivocal statement by a prosecutor that, for the jurors to believe the defense's account, they would have to believe in a government conspiracy, as in Statement Four.[13] The subject remarks of Gracia's prosecutor share the same basic flaw: A prosecutor's impermissible assertion of

---

[12] Gallardo-Trapero, 185 F.3d at 319-21 (court found improper closing argument in which prosecutor asked "do you think that agents for the federal government and a prosecutor for the federal government, for the United States of America, are going to risk their career and get on the stand . . . and commit perjury and risk their career. It's not going to happen, ladies and gentlemen."); see also United States v. Goff, 847 F.2d 149, 165 (5th Cir. 1988) (prosecutor's statements invoking "the dignity of his oaths and office as well as the sanctity of state and federal governmental agencies in order to persuade the jury that they should find appellants guilty . . . were impermissible"). Cf. United States v. Martinez-Larraga, 517 F.3d 258, 265, 271 (5th Cir. 2008) (holding that it was not improper for prosecutor to ask jury why government agents "would . . . get up here and try to make up lies or make up suggestions," and remind jurors that agents "were there," and were "telling you what they saw." The court stated that, "[u]nlike the remarks at issue in Gallardo-Trapero, the prosecutor's remarks did not imply that because they are government agents, the witnesses would not lie. They also do not imply that as a general rule, federal law enforcement agents tell the truth in court . . . . The prosecutor simply suggested that the jury should infer from the facts that the agents did not have a reason to lie.") (internal citation omitted). We note that Statement Two is more similar to the statements at issue in Gallardo-Trapero than those in Martinez-Larraga, as it implied that, because "they are government agents, the witnesses would not lie." Id.

[13] Goff, 847 F.2d at 164 ("The prosecutor further suggested that in order to find appellants not guilty, the jury would have to believe that several governmental agencies and even perhaps federal judges had engaged in a malevolent and illegal conspiracy to convict them. This also was improper argument . . . . Confronted with such argument, jurors could be expected to feel that in order to find appellants innocent they would have to abandon confidence in the integrity of government.") (citing United States v. Dorr, 636 F.2d 117, 119-21 (5th Cir. 1981); United States v. Herrera, 531 F.2d 788, 790 (5th Cir. 1976)).

his own credibility, or that of the government, to bolster the credibility of a witness. As we held in United States v. Gallardo-Trapero, "it is particularly improper, indeed, pernicious, for a prosecutor to seek to invoke his personal status as the government's attorney or the sanction of the government itself as a basis for convicting a criminal defendant."[14] As the "power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says,"[15] — here, that the agents were credible witnesses — all four of the prosecutor's statements constituted error.

2. The prosecutor's errors were plain.

We next turn to the question whether the prosecutor's errors were plain, which we define as "clear and obvious."[16] The government urges us to put the prosecutor's remarks in the context of counsel for Gracia's earlier innuendo that the agents were less than forthcoming. We agree that the magnitude of the prejudicial effect of the prosecutor's remarks should not be weighed in a vacuum, and we recognize that the trial record contains statements by counsel for Gracia indirectly implying that the agents might not be altogether truthful.[17] Thus, the prosecutor's attempts to vouch for the agents' credibility should be seen as a

---

[14] 185 F.3d at 319-20.

[15] United States v. Garza, 608 F.2d 659, 663 (5th Cir. 1979) (quoting Hall v. United States, 419 F.2d 582, 583-84 (5th Cir. 1969)).

[16] United States v. De Jesus-Ojeda, 515 F.3d 434, 445 (5th Cir. 2008) (citing United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994)).

[17] In reference to one of the agents, counsel for Gracia noted in his closing argument that "even when we[] . . . have no incentive to lie, it's human nature . . . . You're a witness for the government. You tend sometimes to recall things a little differently" (Record at 487). Soon after, Gracia's attorney re-emphasized this the-agents-are-lying theme: "And sometimes even after they [the agents] take an oath in court to swear to tell the truth, they still say something that was not true. And they'll swear by it, but it wasn't true" (Id. at 488). Later in his closing argument, Gracia hammered home his assertion that the agents were not telling the truth: "I'm just telling you that people who testify sometimes testify to what they think they remember, but it's not what they remember" (Id. at 490).

response to Gracia's effort to discredit the agents. We weigh the magnitude of the prejudice resulting from the prosecutor's obviously improper statements in this context.

Nevertheless, the context in which each of the prosecutor's improper remarks must be tested is also shaped by his other three improper remarks. Just as we must evaluate the prosecutor's statements in the context of Gracia's earlier attempts to suggest that the agents could be prevaricating, we cannot separately consider each of the prosecutor's erroneous remarks in a framework that excludes his other near-simultaneous, similar attempts to bolster the credibility of the agents. Although we recognize that, "in assessing prejudice, occurrences of prosecutorial misconduct ordinarily must be viewed individually,"[18] the four remarks about which Gracia cries foul occurred within minutes of each other during the prosecutor's rebuttal closing argument. In this instance, the cumulative effect of these proximate comments was greater than the sum of its parts. The prejudicial effect of the prosecutor's statements thus must be weighed in pari materiae. Our analysis would be deficient if we were simply to assess the isolated prejudice resulting from each error standing alone, without temporally and substantively connecting each remark to the prosecutor's witness-bolstering efforts in his rebuttal closing argument.

When we review the prosecutor's remarks within this context, we conclude that his errors were clear and obvious. The four at-issue statements were neither isolated nor limited, but were cumulative components of a single diatribe, indisputably geared toward bolstering the agents' testimony, and thus constituting plain error.

3. The prosecutor's statements affected Gracia's substantial rights.

---

[18] United States v. Fields, 483 F.3d 313, 358 (5th Cir. 2007) (citing United States v. Wicker, 933 F.2d 284, 292 (5th Cir. 1991); United States v. Iredia, 866 F.2d 114, 118 (5th Cir. 1989)) (emphasis added).

This case ultimately turns on the third step in our analysis — whether the prosecutor's improper statements affected Gracia's substantial rights. This step "sets a high bar."[19] "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict."[20]

Gracia contends that the prosecutor's remarks did so by placing the government's weighty imprimatur on the only evidence linking him to a crime, i.e., the agents' testimony. The government counters that even if the prosecutor's statements were legally improper and thus erroneous, they were harmless, i.e., Gracia's substantial rights were not affected, thereby preventing the statements from rising to the level of reversible plain error.[21]

To determine whether the prosecutor's errors affected Gracia's substantial rights, we first examine the effect of the court's cautionary instructions. The district court did help to mitigate the prejudicial effect of the prosecutor's violations somewhat by generically instructing the jury that it was their "duty to base [their] verdict solely upon the evidence without sympathy or prejudice," that they "must consider only the evidence presented during the trial," to "[r]emember that any statements, objections or arguments made by the lawyers are not evidence . . . ," and to remember that "[w]hat the lawyers say is not binding . . . ." "We presume that such instructions are followed unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect of the improper

---

[19] Id.

[20] United States v. Holmes, 406. F.3d 337, 356 (5th Cir. 2005) (internal quotation marks and citations omitted).

[21] See FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"); see also United States v. Jones, 839 F.2d 1041, 1050 (5th Cir. 1988) ("Proper supervision requires us at least to balance the need to protect the integrity of federal trials against the practical interest in giving finality to an accurate and fair verdict; we cannot by our supervisory power reverse a conviction for trial error that was harmless.").

statement is devastating."[22]   Gracia is correct, of course, that the court could have crafted more subjectively detailed instructions geared toward mitigating the prejudicial effect of these particular erroneous remarks, but we do not agree that it is invariably impossible to purge the taint of a prosecutor's prejudicial comments with merely generic cautionary instructions.   The generalized instructions the court gave to the jury did serve, if only moderately, to reduce the degree of  prejudice of the tainted remarks.

This brings us to the next element of our consideration, i.e., the strength or weakness of the government's case against the defendant.  Even crediting the district court's cautionary instructions, we are convinced that the prosecutor's statements, considered as a whole, prejudicially affected Gracia's substantial rights when viewed in comparison to the dearth of other evidence of Gracia's guilt.  Simply put, other than the agents' testimony, there is none.  Gracia's alleged confession was neither recorded nor transcribed.  The sophisticated hidden compartment containing the drugs beneath the floor of the car would not have been apparent to an unknowing passenger.  The $1,000 seized by the agents was taken from Valenzuela-Montoya, not from Gracia.   Gracia's purported contact in Houston (Gerardo or Geraldo) was never located.  Although Gracia did try to make himself gag by putting his fingers down his throat during the early stages of his detention at the B&M Bridge, guilty knowledge cannot be presumed, as the government urges, from such a tertiary circumstantial fact, especially given the fact of Gracia's serious health problems which require frequent dialysis treatments.  Neither can guilty knowledge be inferred from the fact that Gracia did not appear surprised or upset when the agents told him that they had discovered drugs in the Impala.  Indeed, if Gracia had appeared upset or surprised, the government would likely have urged us to infer guilty

---

[22] United States v. Gallardo-Trapero, 185 F.3d 307, 321 (5th Cir. 1999) (internal quotation marks and citations omitted).

knowledge from that, too.[23] The simple reality of this case is that Gracia's conviction turned entirely on the jury's evaluation of the credibility of the agents who interviewed him at the B&M Bridge. Plainly put, absent the jury's crediting of the agents' testimony, Gracia could not have been found guilty beyond a reasonable doubt on the paucity of other evidence.

The prosecutor's imprudent statements unacceptably placed the government's weighty stamp of approval on the only evidence indicating Gracia knew of the cocaine in the Impala's floor, viz., the agents' testimony. The cumulative prejudice resulting from the prosecutor's four erroneous statements in quick succession clears the high bar necessary to affect Gracia's substantial rights and thus to constitute reversible plain error when viewed in the context of the minor mitigating effect of the generic cautionary instructions and the dearth of evidence of guilt other than the bolstered testimony of the agents. The prejudice resulting from the prosecutor's comments seriously affected the fairness, integrity, and public reputation of Gracia's judicial proceeding.

The case law is replete with examples of improper witness bolstering by prosecutors found to be reversible plain error. In United States v. Garza, for example, we held that a prosecutor's repeated vouching for the credibility of witnesses constituted reversible plain error.[24] In United States v. Corona, we held that a prosecutor's statement that he was "proud of" one of the government's witnesses affected the defendant's substantial rights and constituted reversible plain error.[25] In addition to this court, other circuit courts

---

[23] United States v. Zapata-Ibarra, 223 F.3d 281 (5th Cir. 2000) (Wiener, J., dissenting) (criticizing the attribution of guilt from any number of opposite factors).

[24] 608 F.2d 659, 665 (5th Cir. 1979) (court reversed conviction on plain-error review, holding that "we think it beyond question that the prosecutor's improper comments, taken as a whole, affected substantial rights of the defendant").

[25] 551 F.2d 1386, 1389 (5th Cir. 1977) ("As we have stated above the government concedes that it was error for counsel to vouch for this government witness. However, it is

have held similar instances of witness bolstering to be reversible plain error.[26]

We acknowledge that, more often than not, we have held instances of witness bolstering by prosecutors to be error but have gone on to find such error harmless rather than reversing the jury conviction of a defendant.[27] The instant

---

contended by the United States that this was harmless error and it should be overlooked. This court has passed too many times on this kind of comment by prosecutors to permit it to continue by allowing it to be brushed under the rug under the harmless error doctrine.") (internal citations omitted).

[26] See, e.g., Hodge v. Hurley, 426 F.3d 368, 378-79 (6th Cir. 2005) ("The prosecutor's numerous statements on witness credibility — often unsupported by any rational justification other than an assumption that [defendant] was guilty — cannot avoid suggesting to the jury that the prosecutor knows something they do not. Moreover, because these statements by the prosecutor were not coupled with a more detailed analysis of the evidence actually adduced at trial, they convey an impression to the jury that they should simply trust the State's judgment that [the government's witness] was a credible witness and that the defendant's witnesses were non-credible, if not perjurious. This misconduct is especially prejudicial in this case given the extent to which the jury's determination as to [the defendant's] guilt or innocence hinged almost entirely on the credibility of [the defendant] and [the government's witness."); United States v. Francis, 170 F.3d 546, 549 (6th Cir. 1999) (prosecutor's statements that government witnesses were credible because they would not jeopardize plea agreements were reversible error because no adequate curative instructions were given and evidence of defendants' guilt was not overwhelming); United States v. Manning, 23 F.3d 570, 572-75 (1st Cir. 1994) (prosecutor's statement that government witnesses could not lie on stand was reversible error because case turned on whether government witnesses or defendant testified truthfully, no curative instructions were given, and other misconduct occurred); United States v. Dispoz-O-Plastics, Inc., 172 F.3d 275, 287 (3d Cir. 1999) (prosecutor's appeal to jurors' common sense in vouching for credibility of government witnesses was reversible error because it likely had substantial effect on trial outcome); United States v. Cotnam, 88 F.3d 487, 500 (7th Cir. 1996) (prosecutor's repeated vouching for credibility of key witness was reversible error because vouching was prejudicial to defendant and evidence of defendant's guilt was not overwhelming); United States v. Kerr, 981 F.2d 1050, 1052-54 (9th Cir. 1992) (prosecutor's vouching for credibility of four government witnesses was reversible error because witnesses' testimony was crucial to prosecutor's argument, curative instructions did not neutralize harm of statements, and evidence connecting defendant to conspiracy was only indirect); United States v. Eyster, 948 F.2d 1196, 1207 (11th Cir. 1991) (prosecutor's vouching for credibility of key witness was reversible error because undermining credibility of witness was essential to defense and reasonable probability existed that but for prosecutor's improper comments outcome of proceeding would have been different).

[27] See, e.g., United States v. Fields, 483 F.3d 313, 360 (5th Cir. 2007) ("Neither statement is so grave, however, that it risked prejudicing substantially the jury's deliberations. In light of the court's instructions and the strength of the evidence against Fields, Fields has not shown that either remark casts doubt on the correctness of the jury's verdict.") ; Gallardo-Trapero, 185 F.3d at 320-21 (5th. Cir. 1999) ("We conclude that the prosecutor's remarks

13

matter is distinguishable from the cases in which we have refused to reverse convictions, however, because of the degree of the prosecutor's violations in comparison to the dearth of evidence of Gracia's guilty knowledge. As Gracia could not have been convicted without the agents' testimony, we cannot conclude that the prosecutor's bolstering constituted an unprofessional but harmless attempt to right the scale and rebut defense counsel's earlier veiled innuendo that the agents might be less than fully truthful. In this case, the jury's determination of guilt or innocence hinged entirely on whether Gracia had knowledge of the hidden drugs and that, in turn, hinged entirely on the credibility of the agents. The relative strength of the government's case is telling. The prosecutor's plainly erroneous statements led the jury to substitute the government's credibility assessment of its own agents for the jurors' independent credibility call, thereby casting serious doubt on Gracia's guilty verdict. We are convinced that, under the discrete facts of this case, the prosecutor's remarks affected Gracia's substantial rights and seriously affected the fairness, integrity, and public reputation of his trial.

## III. CONCLUSION

Witness bolstering is particularly injurious when, as here, it involves the testimony of the only witnesses (and virtually the only inculpatory evidence) against a defendant. The testimony of the agents was the only evidence tending to prove Gracia's knowledge of the presence of drugs in the car's secret compartment. We cannot permit the prosecutor's remarks to be swept under the rug by the broom of the harmless error doctrine. In this case, a slap-on-the-wrist in obiter dicta will not suffice. The unmistakable misconduct in the bolstering

---

during closing argument did not prejudicially affect the substantive rights of the defendants . . . . Given the strident advocacy on both sides of this case and the numerous witnesses, pieces of evidence, and issues placed before the jury, we cannot say that the prosecutor's statements overshadowed what had come before and unduly prejudiced the Appellants' case. In addition, the district court helped to mitigate any prejudicial effect by instructing the jury to base their decision solely upon the testimony and evidence presented . . . .").

of the government's witnesses at Gracia's trial is precisely the type of conduct that cannot be condoned. It re-affirms the ageless wisdom of Berger:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.[28]

As Gracia's prosecutor did not heed Berger's admonition, he must be held accountable for wrapping his witnesses in the government's cloak of veracity and invoking his personal status as the government's attorney to assure the jury of the credibility of those agents.

We hold that the prosecutor's statements constituted reversible plain error, which seriously affected the fairness, integrity, and public reputation of Gracia's judicial proceeding. Gracia's conviction is therefore REVERSED and his case is REMANDED to the district court for a new trial.

---

[28] Berger v. United States, 295 U.S. 78, 88 (1935).