DENNIS R. BAGNERIS, SR., Judge.
| defendant, Corey Bailey, appeals his conviction on charges of possession of cocaine and possession of marijuana — second *704 offense. Defendant’s appeal also asks this Court to resolve the discrepancy between the sentencing transcript whereby the trial court imposed a fine of $250.00, plus court costs on the marijuana possession charge, and the minute, entry that assessed a $500.00 fine and costs. Defendant represents that the $250.00 fine assessed in the sentencing transcript should prevail. For the reasons that follow, we direct the trial court to amend the pertinent minute entry to show that the proper fine imposed should be the $250.00 fine assessed in the sentencing transcript and order the Clerk of Court to transmit the corrected document to the officer in charge of the institution to which defendant has been sentenced. In all other respects, however, defendant’s conviction and sentence are affirmed.
STATEMENT OF CASE
On June 15, 2011, the defendant, Corey Bailey, was charged by bill of information with one count of possession of marijuana — second offense — in violation of La. R.S. 40:966(E)(2) and one count of possession with the intent to distribute cocaine in violation of La. R.S. 40:967(A)(1). The defendant pled not |2guilty. After a preliminary and suppression hearing, the trial court denied the defendant’s motions to suppress evidence and statement. A jury trial was held on June 19, 2012. The defendant was found guilty of possession of cocaine and guilty as charged on the possession of marijuana offense.
On June 27, 2012, the trial court denied defendant’s motions for new trial and post-verdict judgment of acquittal. After the defendant waived all delays, the trial court then sentenced the defendant to serve four years at hard labor on the possession of marijuana conviction, with credit for time served. In connection with that conviction, the trial court also imposed a fine of $250.00 and court costs of $201.50, although the minute entry provided that the court ordered defendant to pay $500.00 to the judicial defense fund, plus the court costs. Thereafter, the trial court sentenced the defendant to four years at hard labor on the possession of cocaine conviction, with credit for time served. Both sentences were to be served concurrently.
On the same day, the defendant pled guilty to the multiple bill of information, which alleged that he was a second felony offender. The defendant again waived delays. The trial court vacated the prior sentences and resentenced the defendant on each count to four years at hard labor, with credit for time served, to be served concurrently.
Defendant then filed the present appeal.

STATEMENT OF FACT

[1]

The following testimony was adduced at trial.
|sNew Orleans Police Detective Melvin McCollum testified that he conducted a narcotics surveillance of 1702 Egania Street. The residence was a double shotgun house with bars on both front doors. Det. McCollum saw the defendant enter and exit the right side of the residence on several occasions. He noted that the defendant had a key to the residence. The defendant’s mother lived in the left side of the residence. Det. McCollum testified that the defendant was the target of the surveillance. After conducting the surveil *705 lance, he applied for a search warrant which was granted on June 1, 2011. On June 4, 2011, at approximately 2:00 p.m., he executed the warrant, triggered in part by his partner’s surveillance that showed two black males removing furniture from the residence. The other officers involved in the warrant’s execution included Benja Johnson, Willard Pearson, and Todd Dur-rell.
When they arrived at the residence, Det. McCollum observed the defendant standing inside a U-Haul truck and his brother, Robert Bailey, standing on the ground, near the truck. He said Det. Pearson detained Robert Bailey, while Det. Johnson and he dealt with the defendant, who was standing in the truck with his hands behind his back. The officers identified themselves and told the defendant numerous times to let them see his hands, however, he did not comply. Det. McCollum explained that the defendant appeared to be fumbling with the back of his pants. After the officers drew their weapons, the defendant put his hands in front of his body. Det. Johnson handcuffed the defendant and took him to the truck. Det. McCollum did not see Det. Johnson’s search of the defendant. A search of the residence produced no contraband.
l4Pet. McCollum said the defendant was arrested based on what Det. Johnson found during his search. He revealed that the sum of $555.00 was found on the defendant during an additional search at the Fifth District. While at the Fifth District, Det. McCollum said the defendant admitted that the crack cocaine and marijuana, which Det. Johnson had seen defendant drop on to the ground, belonged to him. Det. McCollum added that the defendant signed a “rights of arrestee” form and that he initialed a statement that said “the drugs are mine.” Det. McCollum testified that the street value of the cocaine was approximately $180.00 dollars. He further stated that the amount of cocaine did not appear to be for individual use because each rock of cocaine was individually wrapped.
New Orleans Police Detective Willard Pearson testified that he assisted Det. McCollum in the execution of the search warrant. Det. Pearson said that he detained the defendant’s brother, Robert Bailey. He verified that the defendant’s hands were behind his back and that the other officers gave several commands to the defendant to show his hands. Although Det. Pearson was present when Det. Johnson searched the defendant, he did not see what happened during the pat down. He did see the search of the defendant at the police station, which yielded $555.00 in currency. He also maintained that the defendant signed the “rights of arrestee” form and that he saw the defendant write the statement that “the drugs are mine.” Det. Pearson denied that the defendant was threatened in any way.
New Orleans Police Detective Benja Johnson testified that he participated in the execution of the June 4, 2011 search warrant. He verified the accounts given by Det. McCollum and Det. Pearson of their initial encounter with the defendant and his brother; in particular, that the officers drew their weapons when the defendant failed to respond to their requests to show his hands. Once the ^defendant moved his hands, Det. Johnson entered the truck, handcuffed the defendant, and took him out of the truck. He conducted a visual inspection around the truck. During a pat-down search of the defendant, Det. Johnson said the defendant dropped a plastic baggie from the back of his pants. Det. Johnson retrieved the bag and observed that it contained eighteen rock-like substances and another baggie containing a green vegetable matter, which appeared *706 to be marijuana. Det. Johnson informed Det. McCollum of the drugs found, placed the defendant under arrest, and advised the defendant of his Miranda[2] rights. Once the search of the residence was completed, the officers returned to the Fifth District Police station. A further search of the defendant was conducted, and $555.00 dollars were found on the defendant. He saw the defendant sign a waiver of rights form and make the statement to Det. McCollum that the drugs belonged to him.
Robert Bailey, the defendant’s brother, testified that on June 4th, he and the defendant were in the process of moving their mother when the police arrived. He maintained that he never saw the defendant in possession drugs that day. Bailey testified that his brother was not selling drugs, and no one approached his brother to purchase drugs. Bailey claimed that while he and his brother were moving furniture into the U-Haul truck, five or six police officers ran up towards them, with their weapons drawn, and told them not to move. At that time, Bailey was standing on the ground and the defendant was in the U-Haul truck. He testified that both his mother and his fiancee were walking out of his mother’s house when the police arrived. One of the officers grabbed Bailey, handcuffed him and patted him down. Another one grabbed the defendant and patted him down. Bailey contended that the officers did not repeatedly yell at the defendant.
|fiHe testified that the defendant and he were standing in the street, handcuffed, for twenty to thirty minutes. Thereafter, the defendant was then moved to the corner, and a police officer claimed that he found something on the ground. Bailey stated that he did not see the defendant throw anything to the ground. He also denied that the defendant had his hands behind his back when the police arrived.

ERRORS PATENT

A review of the record for patent errors reveals none.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In the first assignment of error, the defendant contends, and the State concedes, that there is a discrepancy between the sentencing transcript and the minute entry as to the amount of the fine imposed. The sentencing transcript indicates that the trial court imposed a fine of two hundred fifty dollars in connection with the defendant’s conviction for possession of marijuana-second offense. However, the minute entry indicates that a fine of five hundred dollars was imposed. Whenever there is a discrepancy between the transcript and a minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Randall, 2010-1027, p. 3 (La.App. 4 Cir. 6/22/11), 69 So.3d 683, 685, writ denied, 2011-1560 (La.1/13/12), 77 So.3d 952.
Defendant’s assignment of error has merit. Accordingly, we order the trial court to amend the pertinent minute entry to reflect the fine imposed by the sentencing transcript and instruct the Clerk of Court to transmit the corrected document to the officer in charge of the institution to which defendant has been sentenced. La. C.Cr.P. art. 892(B)(2). See State ex rel. Roland v. State, 2006-0244 (La.9/15/06), 937 So.2d 846.
| ASSIGNMENT OF ERROR NUMBER 2
Defendant’s next assignment of error contends that alleged improper comments by the prosecutor during closing argument *707 influenced the jury and contributed to the verdict, thereby depriving defendant of a fair trial.
With reference to the scope argument, La.C.Cr. P. article 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
Prosecutors may not resort to argument involving personal experience or turn argument into a plebiscite on crime. State v. Fortune, 2010-0599, p. 8 (La.App. 4 Cir. 12/22/10), 54 So.3d 761, 766; State v. Jackson, 2008-0286, p. 10 (La.App. 4 Cir. 4/29/09), 11 So.3d 524, 532-533. A prosecutor should refrain from making personal attacks on defense strategy and counsel. State v. Manning, 2003-1982, p. 75 (La.10/19/04), 885 So.2d 1044, 1108, citing State v. Brumfield, 96-2667, p. 9 (La.10/20/98), 737 So.2d 660, 666 and State v. Duplessis, 457 So.2d 604, 609 (La.1984).
However, prosecutors have wide latitude in choosing closing argument tactics. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036; Jackson, 2008-0286, p. 10-11, 11 So.3d at 533. Further, a trial court has broad discretion in controlling the scope of closing arguments. Casey, supra; State v. Jones, 2010-0018, p. 9 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 833. Even in the case of a prosecutor exceeding the bounds of proper argument, a reviewing court will not reverse a conviction unless thoroughly convinced that the argument |sinfluenced the jury and contributed to the verdict. State v. Wiltz, 2008-1441, p. 6 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, 558; State v. Harvey, 2008-0217, p. 4 (La.App. 4 Cir. 5/13/09), 12 So.3d 496, 499. Even where the prosecutor’s statements are improper, a reviewing court should accord credit to the good sense and fairmindedness of the jurors who heard the evidence. Harvey, supra.
In the case at bar, defendant complains of statements made by the prosecutor during rebuttal in which the prosecutor allegedly improperly vouched for the credibility of the State’s witnesses and attempted to shift the burden of proof to the defendant. Some of the comments the State made in closing argument to which defense counsel objected included the following.
Mr. Napoli:
Think about what their theory of this case has to be. Their theory of this case has to be a plant. Has to be that these drugs were planted on Corey Bailey and that these three detectives are lying to you.
What did his own brother tell you? He was standing out there and he looked over. He saw Detective Benja Johnson reach down and pick up something in plastic just a couple of feet away from his brother. Now if you are going to plant something on somebody you already have it on you. You don’t need to recover it from the ground. So plant is out. These detectives couldn’t have planted these drugs on him and we know that from his own brother.
Now what did we learn from that testimony. That the plastic was found just a couple of feet away from this defendant just like the detective told you.
Well they say he didn’t alert us for 30 minutes. Well ladies and gentlemen I submit what happened was he found the drugs right away you don’t start jumping up and down at the scene and say oh *708 look what I found. You wait until the search is done and you alert everyone what you found and that is what was done in this case.
They are arguing to you ladies and gentlemen that these drugs were planted. Their option is that $180.00 worth of crack cocaine and this bag of marijuana—
Mr. Barksdale:
Objection, facts not in evidence. No value was established.
THE COURT:
19Ladies and gentlemen, you heard the testimony. I can’t recite testimony in here. What the lawyers say is argument. You have to rely upon your own memory as to what was said or not said.
Go ahead, sir.
Mr. Napoli:
We will rely on your memory that there is a(sic) $180.00 worth of crack cocaine and this bag of marijuana was just randomly lying in the grass and Detective Johnson just out of luck just picked it up and oh I’m going to plant it on this defendant. That all of these drugs were just randomly lying around.
I submit to you ladies and gentlemen, that is completely unreasonable. More than that, its ridiculous. That in Orleans Parish we would find $200.00 dollars worth of drugs just lying in the grass.
Mr. Barksdale:
Judge, I would just object to the mis-characterization. Mr. Bailey didn’t testify that that’s what he found. He testified that the officer bent down and said he found something.
THE COURT:
Ladies and gentlemen, it is ultimately be (sic) up to you. As I promised everyday in this building, they think the evidence signifies X and they think it signifies Y. Its for you to make whatever inferences you can make from the evidence.
Mr. Napoli:
Let me be very clear on this. The defense counsel maybe misheard what the officer testified to. He made it very clear that he bent down and he picked up something plastic off of the ground and that was the testimony.
Now as you learned in voir dire the defense is not required to put on a ease. When they choose to put on a case, you have to evaluate that case. You look at that case and give it the same scrutiny you give our case.
Mr. Sherman:
That is incorrect, your Honor.
THE COURT:
Ladies and gentlemen, I am going to give you the law as to who carries the burden and you already know that answer now.
Go ahead, sir. The defense doesn’t have to prove anything.
Mr. Napoli:
They have submitted to you throughout this entire trial that he is a welder. That is where the $555.00 dollars came from. That he is a welder. Well if that is true, ladies and gentlemen, they would have |inbrought his employer in. They brought something in here to demonstrate that.
Mr. Barksdale:
Judge, I don’t have to—
THE COURT:
That’s overruled.
Mr. Napoli:
There (sic) huge argument in this case is that this is just not reasonable to believe. That there is no way that a criminal defendant would throw down drugs right in front of an officer.
*709 Well, that why we had Mr. Moll ask the detective about a throw down case because the truth is ladies and gentlemen this is so common. This is seen so often in this building that there is a name for it. This happens all the time. Mr. Sherman:
Objection.
THE COURT:
That’s sustained ladies and gentlemen. You are to judge what happens in this case and this case only.
Mr. Napoli:
Judge, the testimony was that this is a common thing.
THE COURT:
I understand and we are here to evaluate the facts of this case.
Mr. Napoli:
I understand. And the defense counsel argued that this is not reasonable. I would submit to you ladies and gentlemen that the reason is that this defendant did this is exactly what you just saw. For the defense attorney to come in here and argue oh, there is no way that someone would do that. There is a name for this type of case ladies and gentlemen.
Mr. Sherman:
Objection, your Honor.
THE COURT:
That’s overruled.
Mr. Napoli:
You also learned that he should have thrown it down in the truck. Why didn’t he throw it down in the truck? Think about the testimony defense counsel elicited on cross examination. The first officer saying there is no way he said this 20 times. Ladies and |n gentlemen, he was instructed 20 times to show his hands. There wasn’t just one officer there. There were four-or five officers by that truck instructing him repeatedly. So it wasn’t one saying it 20 times. It was 20 times total between the five of them. You will quickly (sic) in the heat of the moment that is going to take a few seconds. He refused to do it hiding something in his waistband, they drew their guns. They draw (sic) their guns while his hands are still in his waistband. Defense counsel, Mr. Barksdale, what did he ask about quick movements? Well ask yourself this. He has his hands behind his back trying to conceal something. At this point the guns are drawn on him and that object is still back there. You think he is going to make a quick movement to throw it away. He would be risking his life because he has guns pointed at him at that point. That’s why he held on to the drugs.
That’s why they were kept in his waistband when he was handcuffed and that’s why when he was brought down from the truck he did the only thing he could do. He reached and just threw them down so they could bring this argument to you today.
You also heard that there was nothing found in the house. So this case just doesn’t stand. He had everything he needed to be a drug dealer on his person. You heard this is $180.00 worth of crack cocaine. That’s what a drug dealer needs to distribute. He already has then (sic) individually wrapped.
You also learn through Mr. Barksdale himself about safe houses. About how drug dealers don’t keep their drugs in the house where they live. Well, ladies and gentlemen I submit to you perhaps there is another house where he keeps the rest of his crack.
Mr. Sherman:
Objection, Judge, facts not in evidence. He is just lying now.
*710 THE COURT:
Ladies and gentlemen you are the ones that have to determine what is in evidence and is not. Try to keep your remarks to what is in evidence, sir.
Mr. Napoli:
We keep arguing all of these things and it wasn’t brought up during Mr. Moll’s closing.. It wasn’t brought up during defense closing. We are almost forgetting that he confessed.
Mr. Sherman:
I’m going to object.
THE COURT:
That’s overruled.
Mr. Napoli:
112Tell me this doesn’t sound like a confession to you? “The drugs are mine, CQB.” They want to argue to you that they were being threatened. That’s why he did it. Because he was being threatened. What I say is not evidence. What Mr. Moll says is not evidence and what defense counsel [says] is not evidence. The evidence is what you hear from this defense stand. Have you heard any evidence indicating that he was threatened?
They argued to you that a phone call was made and it was put on speaker phone and the mom was called and threatened and that’s why he confessed. She is sitting right here. If that were true don’t you think that she would have gotten on the stand and told you about that?
Mr. Barksdale:
Judge, objection—
THE COURT:
I’m sorry. What is the nature of the objection?
Mr. Barksdale:
Burden shifting, Judge.
THE COURT:
That’s overruled. Neither side has a burden of putting anything on. Once items are put into evidence and witnesses are sworn, then its (sic) up to you.
Mr. Napoli:
They presented to you in opening statements and throughout this case that there was a phone call made to this man’s mother.
First of all, I would be certain to have those phone records.
Secondly, I would certainly have his own mother and get on the stand and corroborate that if that was the truth.
While we are talking about the defendant’s mother remember she was there for all of this. She observed this entire thing happen. The entire search of the defendant. Where is she to testify like what his brother did? She is not up there because it is a lie.
Mr. Sherman:
Objection, Judge, we didn’t have to call her—
THE COURT:
Anybody could have called her, ladies and gentlemen.
Mr. Sherman:
It’s the State’s burden to prove their case.
THE COURT:
Anybody could have called her.
| iSMr. Napoli:
Now they also argue don’t consider the client. I mean consider the client and don’t consider anything you heard from the detectives. When I asked Detective McCollum who has dedicated his life to this what is the street value of this? What is the next word you heard? It wasn’t out of his mouth. Its was an objection out of theirs because they don’t want you to consider that. When I *711 asked him is this personal use? Is this something for personal use? Objection again. They don’t want you to—
Mr. Sherman:
Objection, Judge.
THE COURT:
One at a time. What is the objection? Mr. Sherman:
The basis of our objection was that— THE COURT:
I don’t want a story. Just give me an evidentiary reason.
Mr. Sherman:
Its (sic) facts not in evidence. Its (sic)not arguing facts of the case and it is incorrectly stated and its (sic) burden shifting.
THE COURT:
Its (sic) overruled ladies and gentlemen, you all recall what is in evidence and what’s not.
Mr. Napoli:
We presented Detective McCollum with these drugs and we asked him your opinion as a narcotics detective in New Orleans is this for personal use? No. The way it is packaged, the value of this there is no way that this is for personal use. You don’t find $180.00 worth of crack cocaine on a crack head. You find it on a crack dealer. That’s why he had $555.00 in his pocket.
Finally, they get to the reason of the lie. They are going to argue to you why these three detectives lied to you all today. They are saying that Detective McCollum needs to cover his basis [sic] because he went and got a search warrant and he didn’t find anything. So now he his [sic] going to be in very big trouble. So he better plant some drugs on the defendant.
Well first off ladies and gentlemen, I would submit to you that if he was caught planting drugs on someone he would be in a whole lot of more trouble than if he went to a house and simply didn’t find drugs.
_[JiMore important that that [sic] ladies and gentlemen and I want you to think about what the most important witness in this case is. Its not Detective McCol-lum He is not the one who saw the throw down. Its Detective Benja Johnson. So if Detective McCollum was the one who waisted (sic) all this time and committed all these sins, why do you have Benja Johnson on the stand being the one saying that I saw him throw these drugs down? That doesn’t make sense.
I mean what this case boils down to is these three detectives. A combined 26 years of experience—
Mr. Barksdale:
Objection to bolstering the witnesses, Judge.
THE COURT:
That’s overruled. His opinion is just that ladies and gentlemen. Its (sic) opinion. Its (sic) your opinion that matters.
Mr. Napoli:
They have 26 years of experience. They told you what each of them did that day. Detective Johnson who has been on the force for 22 years made it very clear to you that he was standing right there when the defendant threw this to the ground. Its (sic) your job as jurors to determine if you think he was lying. If you think this man — and this wasn’t even his case. He put his entire career on the line to tell a lie for Detective McCollum. Its (sic) nonsensical ladies and gentlemen.
On top of all of that he wrote out his own statement confessing that the drugs were his.
*712 Now its (sic) time to be accountable for that (sic) he wants to present this ridiculous argument. His argument is not supported by the evidence at all.
I ask you to focus on what you heard on the stand. What you got from this witness stand because that is what the evidence is. Not what they told you and not what they lied to you about the threats and all of this stuff and return the proper verdicts.
All three of these detectives were in that room when this statement was made. All three of them made it very clear to you the defendant made the statement and he wasn’t threatened in any way. He admitted to those drugs.
Now it is up to the 12 of you to determine who is telling the truth and who is telling a lie.
I submit to you ladies and gentlemen that they told you the truth. I submit these are three good detectives who did their job that day.
The defendant argues that the prosecutor’s comments were improper in three regards: the statements exceeded the evidence presented; the statements were 11Kburden-shifting; and the statements were made to bolster the credibility of the police officers.
While the prosecution must base its conclusions and deductions in closing argument upon evidence adduced at trial, both the State and defense are entitled to their own conclusions as to what is established by the evidence, and either may press upon the jury any view arising out of the evidence. State v. Sayles, 395 So.2d 695 (La.1981); State v. Everett, 2011-0714 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, writ denied, 2012-1593, 2012-1610 (La.2/8/13), 108 So.3d 77.
In State v. Jones, 2010-0018 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, the defendant argued that the prosecutor’s arguments exceeded the facts presented at trial. This Court rejected the defendant’s argument noting:
This court has refused, however, to reverse defendants’ conviction where the prosecutor’s argument included facts that were not adduced during testimony. See State v. Anthony, 2003-1031 (La.App. 4 Cir. 11/19/03), 862 So.2d 124 (noting that the prosecution’s argument was clearly speculation rather than a reference to facts known to the prosecutor but not brought out at trial). This court was not thoroughly convinced, given the common sense and fairmindedness of the jury, that the prosecutor’s argument contributed to the verdict or influenced the jury. See also State v. Plaisance, 2000-1858 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172 (the prosecutor referred to blood on a seatbelt, a fact not adduced at trial). This court rejected the defendant’s claim that this argument merited reversal of his conviction.
Jones, 2010-0018, p. 13, 51 So.3d at 835.
Our review of the transcript before us fails to support defendant’s claim that the prosecutor’s comments improperly exceeded the evidence. In particular, the defendant claims that the State argued facts not in evidence when it suggested to the jury that the defense did not want the jury to know the street value of drugs. However, we conclude that the prosecutor properly referenced evidence presented during trial and merely argued to the jury the State’s view of that evidence. For instance, Det. McCollum did testify as to the value of the cocaine and also testified | 1(ithat the recovered cocaine did not appear to be for personal use. The prosecutor’s closing arguments stressed to the jury the State’s version as to what the evidence established and rebutted the de *713 fendant’s account; therefore, they did not exceed the evidence.
Next, we consider defendant’s complaint that some of the prosecutor’s statements suggested that the defendant had a burden of proof. Defendant contends that the prosecutor’s comments regarding the defendant’s failure to call his mother and employer as witnesses in order to bolster his claims that the confession was coerced and that he was gainfully employed as a welder amounted to burden-shifting. We disagree. Instead, we find that these comments were proper as they merely restated evidence or lack thereof that was presented during the trial.
In State v. Turner, 626 So.2d 890, 898-99 (La.App. 3 Cir.1993), the defendant argued that the State’s remark during rebuttal about the defense’s failure to call defendant’s brother as a witness was an unlawful attempt to switch the burden of proof. The trial evidence revealed that the defendant’s brother was present when the crime was committed. Relying upon this Court’s ruling in State v. Taylor, 533 So.2d 94 (La.App. 4 Cir.1988), the Court found that the prosecutor’s closing remarks concerning lack of defense witnesses were merely restatements of evidence presented at trial and therefore, were proper. For similar reasons, we reach the same result in the present matter.
Defendant also represents that the State engaged in “burden shifting” when it asked the jury to evaluate the defendant’s case as it would evaluate the State’s case. However, we also find that this statement did not improperly shift the burden of proof to the defendant. Taken in context, the prosecutor argued only that the | injury had the responsibility of evaluating the credibility of all the witnesses in the same manner. Upon review, none of the arguments cited by the defendant in the prosecutor’s closing argument amounted to unlawful attempts to shift the burden of proof. •
Lastly, the defendant contends his conviction should be reversed because the prosecutor made numerous improper comments to bolster the credibility of the police officers. The Supreme Court, in State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, held that while a prosecutor may not give his personal opinion regarding the veracity of a witness, it is permissible for him to draw inferences about a witness’s truthfulness from matters on the record. A prosecutor is allowed to respond to defense counsel’s arguments attacking the credibility of police officers. Such remarks are within the scope of rebuttal. State v. James, 545 So.2d 560, 567 (La.App. 4 Cir.1989).
The defendant in State v. Johnson, 559 So.2d 911 (La.App. 4 Cir.1990), argued that the prosecutor improperly commented on the police officer’s credibility during closing arguments. The prosecutor stated, “The defendant’s trying to get you to believe that the police officers planted this gun and stuff on him. Now, that doesn’t make sense. These police officers would be risking their job, their livelihood to convict this man, what for? No reason.” 559 So.2d at 914. This Court noted that defense counsel failed to object to the statement and as such, defendant had waived his right to seek review on appeal. However, the Court considered the defendant’s argument and found that the prosecutor’s statement was not improper, considering that one of the defendant’s theories at trial was that the police planted the gun on the defendant. The Court held that “because the credibility of the officers was a crucial factor in that defense theory, the remarks in 11Rquestion regarding possible repercus *714 sions that the officers would suffer by such actions were appropriate comments in response to the allegations raised by the defense.” Johnson, 559 So.2d at 914.
Moreover, in State v. Jason, 99-2551 (La.App. 4 Cir. 12/6/00), 779 So.2d 865, this Court recognized that the prosecutor’s statement — that it was defense counsel’s job to attack the credibility of the State’s witnesses — was not improper. The decision explained that the statement was made to rebut defense counsel’s argument that the jury should not believe the State’s witnesses. The Court noted that “[t]he jury’s function is to assess the credibility of the witnesses, and it is proper for both sides to argue that their witnesses should be believed and the other side’s not believed.” Jason, p. 7, 779 So.2d at 870.
In the present case, the defendant relies upon United States v. Gracia, 522 F.3d 597 (5th Cir.2008), in support of his argument that the prosecutor’s remarks were prejudicial and deprived him of a fair trial. In Gracia, the prosecutors made remarks that allegedly bolstered the credibility of the agents.
Gracia points to four remarks by the prosecutor that bolstered the credibility of the agents who interviewed him. First, the prosecutor expressed his opinion to the jury that the agents were “very, very credible” witnesses (“Statement One”). Second, the prosecutor asked the jurors rhetorically whether they thought that an agent “who has worked as a law enforcement agent for many years, that is his career, that is his chosen life, a man from this area, a man with a family, do you think that he would throw all that away by taking this stand and taking an oath and lying to you to get Mr. Gracia”; and whether the agents “would put their careers and criminal prosecution on the line for committing the offense of aggravated perjury” (“Statement Two”). Third, the prosecutor told the jury: “I’m going to ask you to respect their efforts as law enforcement officials and to believe the testimony that they offered” (“Statement Three”). Fourth, the prosecutor admonished the jurors that, to acquit Gracia, they would have to believe that the agents “got out of bed” on the day they arrested Gracia and decided that this was “the day that [they] were going to start [a] conspiracy to wrongfully convict Mr. Gracia” (“Statement Four”). Gracia insists that these remarks constituted reversible plain error. The government concedes that Statements |1flOne and Three may have been improper, but nevertheless contends that all four statements were harmless error.
Gracia, 522 F.3d at 600. The Fifth Circuit found that the statements were improper and constituted error that required reversal of the defendant’s conviction.
However, the Fifth Circuit distinguished Gracia in United States v. McCann, 613 F.3d 486 (5th Cir.2010). In McCann, the defendant argued that the prosecutor made comments which bolstered the credibility of the police officers. One comment was made during closing argument and one comment was made during rebuttal. The government argued that the comments were an “invited response” to the accusations of framing and lying made by McCann’s counsel. See generally United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985) (“[I]f the prosecutor’s remarks were ‘invited,’ and did no more than respond substantially in order to ‘right the scale,’ such comments would not warrant reversing a conviction.”). The Fifth Circuit held that the closing comment, which was limited to factual comments concerning the defense’s repeated assertions that the officers were lying, was proper. McCann, 613 F.3d at 497-498.
*715 The Fifth Circuit also distinguished Gracia in United States v. Surtain, 519 Fed.Appx. 266 (5th Cir.2013), and found the defendant’s reliance upon Gracia misplaced. In Surtain, the defendant complained that the prosecutor made improper remarks about the credibility of the federal agents. The prosecutor stated:
And these two phenomenal agents, Bobby Stoltz and Wyatt Evans, they went backwards. They went to the Augusts. “Hmm, insurance. Let’s dig a little deeper.” That led to Stefan James, and that led to this prosecution. Just phenomenal work that you saw over the last week.... [W]e put on a compelling case, thanks to those two gentlemen right here.
Surtain, 519 Fed.Appx. at 291.
|2oThe court held that the comments were not improper, but were based upon the prosecutor’s descriptions of the investigation. Moreover, the decision also found that the prosecutor did not improperly vouch for the credibility of witnesses where the prosecutor made comments on rebuttal to counter specific attacks defense counsel made on the credibility of the government’s witnesses. The court opined:
In each of these statements, the government fairly implied, based on record evidence, that the witnesses had strong motives not to lie. Moreover, the prosecutor made these comments on rebuttal to counter specific attacks defense counsel had made on the witnesses’ credibility. Bolstering is permitted in such circumstances. McCann, 613 F.3d at 495. Id.
In the present case, the prosecutor’s remarks were in response to defense counsel’s numerous statements that the police officers were lying and that the police officers planted the drugs on the defendant. Just as in Johnson, the prosecutor’s comments were appropriate because the credibility of the police officers was a crucial factor in the defense’s theory that the drugs were planted on the defendant because no drugs were found in the house during the execution of the search warrant. Accordingly, the defendant’s reliance upon Gracia is misplaced. The prosecutor’s rebuttal comments were a proper response to defense counsel’s closing argument which questioned the veracity and motives of the State’s witnesses.
Defendant does not convince this Court that any of the prosecutor’s closing arguments improperly influenced the jury and contributed to the verdict. The State’s closing remarks fell within the scope of rebuttal. Accordingly, this assignment of error lacks merit.
| „ CONCLUSION
Based on the foregoing reasons, defendant’s convictions are affirmed. However, we clarify defendant’s sentence to order the trial court to amend the pertinent minute entry to reflect that the fine imposed in regards to the defendant’s conviction for possession of marijuana-second offense was $250.00, and order the Clerk of Court to transmit the corrected document to the officer in charge of the institution to which defendant has been sentenced. In all other respects, the defendant’s convictions and sentences are affirmed.
CONVICTIONS AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED.

. The State and the defendant entered into two stipulations at the beginning of trial. The first stipulation stated that if New Orleans Police Department Criminalist John Palm were called to testify, he would testify that the eighteen rock-like substances tested positive for cocaine and the green vegetable substance tested positive for marijuana. The second stipulation provided that the defendant had previously pled guilty to simple possession of marijuana in case number 2009-5501.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).